Briggs et al. *v.* Philadelphia (et al., Appellant).

Argued May 24, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*J. W. McWilliams,* with him *A. F. Barbieri* and *Charles S. Wesley,* of *Tustin & Wesley,* for appellant.

*John J. K. Caskie,* with him *David J. Smyth,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1934:

Suit was brought in behalf of Helen Briggs, a minor, and by her parents against the City of Philadelphia, to recover damages for personal injuries suffered by her, due to falling on a defective foot pavement in front of a property, title to which is in the Germantown Trust Company, as trustee, and which her father, Harry Briggs, occupied as tenant, in pursuance of a written lease from the trust company. He had been in possession of the property for thirteen years under a continuing monthly lease, which imposed upon him the obligation to keep the premises in good order and repair. The City of Philadelphia by sci. fa. brought Harry Briggs and Germantown Trust Company in as additional defendants. On the trial the court gave binding instructions in favor of the trust company and the jury rendered a verdict in its favor. It found for the plaintiffs against the city in the sum of $1,200, and in favor of the city against Harry Briggs for a like sum. Judgments were entered on the verdicts, and, from the one in favor of the Germantown Trust Company the city appealed to the Superior Court, which reversed the judgment in the trust company's favor and awarded a

new trial. From this action of the Superior Court we allowed this appeal.

During the course of the trial counsel for plaintiffs made an offer to prove, by Harry Briggs, that the defective condition of the sidewalk had existed for six months, and that he had notified the Germantown Trust Company two months prior to the accident "by going to the Germantown Trust Company and notifying someone on their premises there." A further offer was made to prove that at about the same time a letter was sent by the wife of the witness to the trust company informing it of the condition. The trial judge refused the offers.

It was upon this ruling that the Superior Court reversed the judgment in favor of the trust company, stating, as its view, that if the testimony should be sufficient to show actual notice to the owner of the alleged nuisance, this would have been adequate to warrant recovery over by the city from the trust company of the damages assessed against the former. The Superior Court reached its conclusion from a consideration of an ordinance passed by the city on May 3, 1855, from the provisions of the Act of May 16, 1891, P. L. 75, section 11, 53 P. S. section 771, and from certain of our and its own cases.

The ordinance provides: "The footways of all public streets and highways, and the cartways and footways of all private streets, shall be graded, paved and curbed and kept in repair, at the expense of the owners of ground fronting thereon." The Act of 1891, section 11, authorizes municipal authorities to require sidewalks to be laid and kept in repair and after notice from the municipality to the owner to do the work, and upon his failure to comply, to do the work itself and assess the cost upon the owner and file a lien therefor or collect the same by action of assumpsit.

It is said by the Superior Court that the duty thus imposed upon property owners is a matter relating to

the public health and safety, a police regulation, which is nondelegable, that the primary duty is on the owner, so far as the city is concerned, properly to maintain the sidewalk, and that the neglect so to do imposes a liability which is not shifted to the lessee. Whether or not we agree with these general observations, which seem to us to be the foundations for that court's conclusion, we think they are not pertinent to the inquiry which this case develops. We are not confronted with notice by the city to the property owner (when that situation arises will be time to conclude about its effect), but with alleged notice by a tenant who was himself bound to make the repair. A tenant cannot shift responsibility to his landlord in this way nor can the city acquire any advantage against the owner because of the action of his tenant.

After full consideration of all prior cases, we decided in Philadelphia v. Merchant. & Evans Co., 296 Pa. 126, and Bruder v. Philadelphia, 302 Pa. 378, that the owner in possession of a property is primarily responsible for a defective sidewalk in front of it, but if he is out of possession, because of a lease of the entire property, his liability ceases and the tenant is liable for injuries occurring to a third person because of a failure to repair a sidewalk; that the landlord is liable for defects existing at the time of executing the lease, but where the premises become defective, while in the occupancy and control of the tenant, he alone is liable. The latter is the situation here.

As before stated, the Superior Court turns the case on the notice from the tenant to the owner. Such notice can have no effect because the tenant cannot relieve himself from his duty and responsibility by giving it. The ordinance and the Act of Assembly of May 16, 1891, P. L. 75, section 11, 53 P. S. section 771, referred to by the Superior Court have no bearing on the matter of notice by the tenant to his landlord; they simply fix the duty of the owner so far as the maintenance of

sidewalks is concerned, and prescribe the remedies of the city against him if he fails to fulfill it,—that the city may do the work and recover the expense from the property or from him personally. They do not deal in any manner with the city's right to recover from him damages which may in the first instance be recovered from it: Newcastle v. Kurtz, 210 Pa. 183, 187. The statutes in no event can be applied to the pending case, because even the right of the city to recover the cost of repairs must be based upon notice given by it to the property owner. In none of our cases cited by the solicitors for appellee (Ashley v. Lehigh & Wilkes-Barre Coal Co., 232 Pa. 425; Brookville Borough v. Arthurs, 130 Pa. 501, 152 Pa. 334; Gates v. Penna. R. R. Co., 150 Pa. 50; McLaughlin v. Kelly, 230 Pa. 251; Dutton v. Lansdowne Borough, 198 Pa. 563) was a notice given by tenant to owner. Mintzer v. Greenough, 192 Pa. 137, somewhat relied upon by appellee, was overruled in Lindstrom v. Pennsylvania Co., 212 Pa. 391, 394.

We are of opinion that the offers of evidence, to prove notice by the tenant to the appellee, were properly rejected by the trial court, and that the Superior Court erred in reversing the judgment in favor of the Germantown Trust Company because of their rejection.

The judgment of the Superior Court is reversed and that of the Court of Common Pleas is reinstated and affirmed.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

I cannot concur in the majority opinion. No ordinance and no statute requires "notice *from the municipality* to the owner," to make the latter *liable in tort*. The Act of May 16, 1891, P. L. 75, section 11, provides: "The municipal authorities may require......sidewalks ......to be......kept in repair, and after notice to the owner......to......repair such walks and stone in front of his, her or their property, said municipal authorities may do the necessary work and assess the

cost thereof *upon the property* of said owner or owners in front of or along which said walk......so...... repaired, shall be situate, and *file a lien* therefor or collect the same by action of assumpsit." The Philadelphia city ordinance of May 3, 1855, provides as follows: "The footways of all public streets and highways ......shall be......kept in repair, at the expense of the owners of ground fronting thereon." There is thus clearly imposed by law a duty on the person designated, to wit, the owner of the fronting ground. Here that means the Germantown Trust Company. Where a public duty is ignored and injury is the consequence, there follows liability in tort. When one owes the public a duty to act, he is not ordinarily relieved of his duty by contracting with another to perform it. I think the Superior Court was right in its statement that "the public duty of the lessor is not divested by making a lease, it is only *qualified* by requiring notice of the defect on account of his nonoccupancy: Lindstrom v. Penna. Co., 212 Pa. 391, 61 A. 940; Ashley v. Lehigh & Wilkes-Barre Coal Co., 232 Pa. 425, 81 A. 442."

The majority opinion says: "Whether or not we agree with these general observations, which seem to us to be the foundations for that court's [the Superior's] conclusion, we think they are not pertinent to the inquiry which this case develops. We are not confronted with notice by the city to the property owner......but with alleged notice by a tenant who was himself bound to make the repair. A tenant cannot shift responsibility to his landlord in this way nor can the city acquire any advantage against the owner because of the action of his tenant."

I think the answer to this is that when the city imposed a duty "to keep in repair" all "footways" at the expense of the owners of contiguous ground it did not make the performance of this duty contingent upon a notice *from the municipality* to repair a specific sidewalk or footway. A general command from one legally

authorized to give it must be obeyed by all persons under the compulsion of obedience to that command. The notice to repair provided for in the Act of 1891 is a notice the municipality must give before *it can do the work itself* (upon the owner's failure to comply with the notice given) *and assess the cost against him and collect the same by action of assumpsit*. That notice is prerequisite to the exercise of a procedural right and not a prerequisite to the performance of a public duty by an abutting property owner. "In the case of borough sidewalks, the owners of property are required by law to keep their footways in repair......This is a duty imposed directly upon the property owner, and is in the nature of a police regulation": Wilkinsburg Boro. v. Home for Aged Women, 131 Pa. 109, 18 A. 937. "An ordinance requiring lot owners to lay sidewalks is a police regulation. A duty is imposed, the neglect of which creates a liability—if it be so ordained—to the municipality for the cost it has been put to in doing that which he [the lot owner] ought to have done": Pittsburgh v. Daly, 5 Pa. Superior Ct. 528.

If we take the law to be that even a liability imposed by law on the owner to keep his sidewalks in repair is contingent upon notice to him that they are out of repair, that contingency is present here. The "notice" referred to in Ashley v. Lehigh & Wilkes-Barre Coal Co. (supra), and other cases, was not restricted by making it a notice from any certain source. Notice means knowledge or information; whatever puts one upon inquiry amounts to notice. See Words & Phrases, 1st edition, volume 5, page 4840. For example, if one was charged with receiving stolen goods "knowing they were stolen," it would be no defense that while he had actual knowledge that the goods were stolen he did not have that knowledge *from the thief*. Proof that the Germantown Trust Company had actual notice that the sidewalk was in disrepair should have been received. Its duty to the public to keep that sidewalk in repair

was not a somnolent one which could be galvanized into legal life only by a notice *from the municipality.*

I think it pertinent to call attention to the fact that some of our later cases, notably Phila. v. Merchant & Evans Co., 296 Pa. 126, 145 A. 706, holding that the liability of an owner for defects in the pavement or sidewalk ceases when he is out of possession, seem to be based on the case of Schott v. Harvey, 105 Pa. 222. In that case it was clear from the context that the word "owner" in the statute there being interpreted clearly meant the person in possession as distinguished from the owner of the fee. Justice PAXSON said that the "reasonable construction" of the act imposing "upon the owners, superintendents or managers of factories" the duty of providing fire-escapes, was that by owner was meant "the occupant in possession, who places the operatives in a position of danger and enjoys the benefit of their success."

I understand the majority opinion as holding that the Germantown Trust Company is relieved from the duty expressly imposed upon it by ordinance, *not because it was out of possession,* but because it did not receive *from the city* notice of the defect in the sidewalk. I am unable to find anything in any ordinance of the City of Philadelphia or in any previous decision of this court which thus defines the character or limits the source of the "notice" which an owner out of possession must receive in order to make his legally imposed liability operative.

In Lindstrom v. Penna. Co., 212 Pa. 391, 394, 61 A. 940, this court, in discussing Mintzer v. Greenough, 192 Pa. 137, 43 A. 465, said that a point reading as follows should have been affirmed "as a correct announcement of the general principle": "An owner out of possession, whose house is in the actual occupation of a tenant, is not required to keep a constant supervision of such house and of the highway in front of it; and if a defect occurs in the sidewalk during such occupation by a

tenant, by reason of which a person walking on the street is injured, the landlord is not liable to the person injured, unless knowledge or notice of such defect is traced to him." The converse of this is, of course, that under the circumstances stated the landlord *is* liable if knowledge or notice of such defect is traced to him. Here knowledge or notice was "traced to" the landlord.

I would therefore affirm the judgment of the Superior Court.