## Duffy, Appellant, v. Duffy.

Argued March 6, 1935.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Carlon M. O'Malley,* and with him *P. E. Kilcullen,* for appellant.

*Frank M. Walsh,* for appellee.

Opinion by Baldrige, J., April 15, 1935:

The plaintiff sued her minor son, Joseph A. Duffy,

aged 18, for injuries she received while riding as a guest in a motor vehicle operated by the minor defendant. The case was submitted to the jury, and a verdict was rendered for plaintiff. The learned court below made absolute a rule for judgment n. o. v. This appeal followed.

The query before us is: May an action for personal injuries resulting from negligence be maintained by a parent against an unemancipated child?

This exact question seems never to have been considered by an appellate court in this Commonwealth. In the case of Briggs et al. v. City of Philadelphia et al., 112 Pa. Superior Ct. 50, 170 A. 871, we had occasion to discuss the converse of this proposition, viz: the right of an unemancipated minor to sue a parent for personal injuries arising out of the negligence of the parent. We there said (p. 55):

"There never has been a common law rule that a child could not sue its parent. But, there is substantial decisional authority that it is not permitted, on the theory that it is disruptive of the family peace, destructive of the enforcement of discipline, and, therefore, against public policy. We recognize the wisdom of these rulings as the state and society are vitally interested in the integrity of, and harmony in, the family. In support of this doctrine, see Foley v. Foley, 61 Ill. App. 577; McKelvey v. McKelvey, 111 Tenn. 388, 77 S. W. 664; Roller v. Roller, 37 Wash. 242, 79 Pac. 788; Smith v. Smith, 81 Ind. App. 566, 142 N. E. 128; Taubert v. Taubert, 103 Minn. 247, 114 N. W. 763; Matarese v. Matarese, 47 R. I. 131, 131 A. 198; Wick v. Wick, 192 Wis. 260, 212 N. W. 787; Sorrentino v. Sorrentino, 248 N. Y. 626, 162 N. E. 551; Damiano v. Damiano, 6 N. J. Misc. Rep. 849, 143 A. 3." See, also, 20 R. C. L. 631.

The Briggs case was not sustained by the Supreme Court (316 Pa. 48, 173 A. 316), but the reversal turned on another point. The reasoning therein on the ques-

tion now before us is supported by the great weight of decisions and is applicable in the present case where the minor is the defendant instead of plaintiff. In each instance, discord in the home, disorganization of the family relation, and the severing of the natural ties of affection are apt to follow. That is what the state desires to prevent rather than promote.

This same question on almost identical facts was considered in Schneider et al. v. Schneider (Md.), 152 A. 498. A minor son was driving his father and mother from a visit with a friend in his brother's car when his mother was injured through his negligence. She brought suit against him. The court refused to allow recovery on the ground that the parent was the natural guardian of her minor son and ought not to recover against him as it would be against public policy. The court stated (pp. 499, 500):

"The ordinary position of parent and guardian of a minor, and that of a plaintiff seeking to recover from the minor, are positions which cannot both be occupied by one person at one and the same time. Maintenance of the suit is inconsistent with the parent's status or office, and the dependence of the minor upon her, and also with the dependence of the law upon her, for the fulfillment of necessary legal and social functions. A right of action at law is not open to any and all persons against any others, without reference to relationships which may exist between them ...... And even if, in view of the antagonistic position sought to be taken by the parent, another might be appointed guardian ad litem, the natural dependence of the child on the parent would inevitably leave him largely subject to the parent's guidance and direction."

In both Crosby v. Crosby, 246 N. Y. S. 384, and LoGalbo v. LoGalbo, 246 N. Y. S. 565, the facts were very similar. Recovery in each case was denied. In the latter case, the court, however, questioned the cor-

rectness of its conclusion in automobile cases under present day conditions, stating: "It is a matter of common knowledge that a great proportion of owners of automobiles are protected against damages by insurance, and that in such cases no question of public policy could possibly be involved (excepting only in cases of fraud in the action itself)." But the writer of the opinion felt bound by their former decisions, and stated that to rule otherwise would be futile in the absence of any statute.

Without a legislative mandate, we see no justification for making such a discrimination, thus segregating automobile cases from other actions by a parent growing out of the negligent conduct of an unemancipated minor, because in many automobile cases insurance might be carried that would give protection. That distinction has never been recognized in any of the decisions called to our attention, and we refuse, as that court did, to adopt such a theory.

There is but one case (Wells v. Wells (Mo.), 48 S.W. 109) that gives some support to the plaintiff's position. The mother sued her unemancipated son for his negligence in an automobile accident. The court, in holding the action would lie, stated: "The public policy of this state on the question at issue has been declared in [Dix v. Martin, 157 S. W. 133]. We could not sustain the contention of defendants without overruling that case which we decline to do. The point is ruled against the defendants."

The Dix case was entirely different in its facts. There, the infant plaintiff brought a suit, alleging that the defendant had cruelly whipped her. Her parents were dead and her grandfather had placed her in the custody of the defendant, who later refused to surrender her to her grandfather when demand was made upon the defendant to do so. The child was treated as "a sort of servant" in the defendant's household.

The court held there that the defendant was liable and should answer for her excessive punishment, as the relation existing was really that of master and servant, that the relationship of parent and child did not exist. The decision in the Wells case was evidently based upon a misconception of the Dix case.

We are of the opinion that the sound and strong reasoning in opposition to a parent's right to recover against an unemancipated minor in negligence cases should prevail.

Judgment is affirmed.