## Samborski v. Beck et al.

*Freedman & Goldstein,* for plaintiff.
*Arthur M. Cooper* and *S. C. Grossman,* for defendants.

FLOOD, J., April 4, 1941.—This matter is raised on defendant Demenescu's motions for judgment n. o. v. or new trial after the jury had returned its verdict for plaintiff.

Plaintiff, a minor, was injured seriously as the result of a fall from the rear porch of a third-floor apartment occupied exclusively by Demenescu, the fall being caused by the state of disrepair of the wooden floor boards and railings. Thereafter, an action in trespass was brought by the child, through her next friend, the guardian of her estate appointed by the orphans' court. At the trial a nonsuit was granted as to the landlord-defendants, Regina and Bennie Beck. Defendant Demenescu's motion for a nonsuit on the ground that he stood in loco parentis to the minor plaintiff was denied, this issue later being submitted to the jury.

Defendant's brief raises but a single question for our consideration, namely, whether the evidence in this case requires judgment to be entered in his favor non obstante veredicto on the ground that it establishes as a matter of law that he stood in loco parentis to the child. All other issues having been expressly abandoned, our discussion will be confined to this problem.

1. Although our Supreme Court has never directly passed on this point (Minkin et al. v. Minkin, 336 Pa. 49 (1939)), the cases are practically unanimous that an unemancipated minor may not maintain an action against his parent to recover for personal injuries caused by the latter's negligence: Duffy v. Duffy, 117 Pa. Superior Ct. 500 (1935); Materese v. Materese, 47 R. I. 131 (1925); Wick v. Wick, 192 Wis. 260 (1927); Kelly v. Kelly, 158 S. C. 517 (1930); Reingold v. Reingold, 115 N. J. L. 532 (1935); Turner v. Carter, 169 Tenn. 553 (1936); Luster v. Luster, 299 Mass. 480 (1936); Rambo v. Rambo, 195 Ark. 832 (1938); Lasecki v. Kabara, 235 Wis. 645, 294 N. W. 33 (1940); Diggan v. York-Buffalo Motor Express, Inc., 31 D. & C. 560 (C. P. Northumberland Co., 1938); Morris et al. v. McKinley et al., 33 D. & C. 696 (C. P. Beaver Co., 1938).* Recognizing the rule to be without foundation in the common law, nevertheless, our courts have barred such actions on the theory that they are disruptive of the family peace, destructive of the enforcement of filial discipline and, therefore, against public policy. See Briggs et al. v. City of Philadelphia et al., 112 Pa. Superior Ct. 50 (1934).

2. "Where one stands in loco parentis to another, the rights and liabilities arising out of that relation are, as the words imply, exactly the same as between parent and

---

* The problem raised by the circumstance that defendant carries liability insurance is not involved in the present case. Where such is the case, some courts have relaxed the rule and permitted the maintenance of the action: Lusk v. Lusk, 113 W. Va. 17 (1932); Dunlap v. Dunlap, 84 N. H. 352 (1930); Worrell v. Worrell, 174 Va. 11 (1939).

child": Young v. Hipple, 273 Pa. 439 (1922). Accordingly, where the case has arisen, the same rule of non-liability has been applied in actions by unemancipated minors against persons standing in loco parentis to them: Trudell v. Leatherby et al., 212 Calif. 678 (1931); Cook v. Cook, 232 Mo. App. 994, 997 (1939).

"The proper definition of a person in loco parentis to a child, is a person who means to put himself in the situation of a lawful father of the child with reference to the father's office and duty of making provision for the child": Robinson's Estate, 35 Pa. Superior Ct. 192, 195 (1908); Renovich v. Bethlehem Mines Corp., 131 Pa. Superior Ct. 351, 354 (1938). He is a person "who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption. . . . The assumption of the relation is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relation": Bennett's Estate, 30 D. & C. 148, 151 (O. C. Northampton Co., 1937); Lando v. Philadelphia & Reading C. & I. Co., 1 D. & C. 22, 25 (C. P. Northumberland Co., 1921). Similarly, see Von der Horst et al. v. Von der Horst et al., 88 Md. 127, 130 (1898), Mott, etc., v. Iossa et al., 119 N. J. Eq. 185, 188 (1935), and Trudell v. Leatherby, supra, at p. 682.

In the present case, the testimony on this issue was as follows: According to Josephine Samborski, mother of the minor plaintiff, called on her behalf, she and the child came to live with Demenescu on March 13, 1937. She then was separated from her husband and received no support from him. She was unemployed and without any means of support. Demenescu took it upon himself to provide for them. He supported the child, providing her with food, shelter, and clothing, spending money on her and paying her medical expenses when she became ill. He acted in many ways like a father to the child, who called him "Tate", meaning "Daddy". Mrs. Samborski secured employment with the W. P. A. from January 23, 1938,

until the middle of August 1938, and received $30.25 every two weeks. However, during this period, Demenescu continued to support the child in the same manner without reducing his expenditures. The accident occurred on May 27, 1938. In the fall of 1939, Mrs. Samborski and the child moved away from Demenescu and lived apart until December 2, 1940, when they both returned. During this period, the child often visited Demenescu, sometimes without permission. He then would give her spending money and buy her shoes and clothing when she needed them. Demenescu paid part of the hospital expenses arising out of the accident although Mrs. Samborski said that she paid some herself when she was reluctant to ask him for money. Both mother and child now are living with defendant.

Plaintiff herself testified as follows: At the time of the accident she was five years old. Demenescu was her "Tate" (father). Since she has been living with "Tate", her real father never has given her anything and "Tate" has acted like a father to her. During the period they lived apart, she used to see him almost every day. She would visit him and sometimes he would come to see her. Since she first came to live with him until the present day, without interruption, he bought her clothes and gave her money. He was her "Tate" because "he provides me a home and gives me eats and buys me clothes, he lets me go to the movies on Saturday and Sundays" and, in general, because he treated her just as a true father would.

It is true that the testimony on which defendant relies in support of his motion for judgment n. o. v. is the uncontradicted testimony of plaintiff and her own witnesses, and it therefore must be accepted as true. The inferences to be drawn therefrom were, however, properly left to the jury. The question as to whether plaintiff intended to assume the obligation to support the child is a question of fact, and we cannot say that the inferences from the testimony were so clear that the determination of that fact should have been taken away from the jury. The rela-

tionship between the parties in many of the cases cited by defendant was that of stepfather and stepchild. In most of the other cases cited there was some blood relationship. Here there was no relationship by blood, marriage, or adoption. True, the relationship of loco parentis need have no such foundation and may also be a temporary one. But where the bond between the parties is so tenuous as in this case, where its continuance depends, to a great extent at least, upon the maintenance of a meretricious relationship between defendant and plaintiff's mother, we cannot say that the existence of the status of loco parentis should have been declared as a matter of law. Therefore defendant's motions must be overruled.

### Order

And now, April 4, 1941, the motions for judgment non obstante veredicto and new trial hereby are overruled and judgment accordingly is entered on the verdict in favor of plaintiff.