## Guyton et vir *v.* Pittsburgh, McCurdy, Appellant.

Argued April 13, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*James R. Van Kirk*, with him *John M. Russell* and
*J. M. Stoner & Sons*, for appellant.

*Thomas E. Barton*, Assistant City Solicitor, with him
*Anne X. Alpern*, City Solicitor, for appellee.

OPINION BY KELLER, P. J., July 15, 1944:

This is an action in trespass brought by Katie Guyton and Pringle Guyton, her husband, to recover damages sustained by them respectively by reason of injuries received by the wife plaintiff, from a fall due to a defective sidewalk abutting premises 1712 Webster Avenue, Pittsburgh. The city brought in as additional defendants Fidelity Trust Company (hereafter referred to as Fidelity) and Mary Turfley, individually and as Trustees of the Estate of George G. Turfley, deceased, alleged to be the owners, and Florence R. McCurdy, alleged to be the mortgagee in possession and control of the premises involved. The trial court at the conclusion of the testimony gave binding instructions in favor of Fidelity and Mary Turfley as trustees, and in favor of the former, individually. The jury returned verdicts in favor of the wife plaintiff and her husband, for $1,200 and $130, respectively, against the City of Pittsburgh, original defendant, with liability over in its favor against Florence R. McCurdy, and in favor of Mary Turfley, individually.

Florence McCurdy filed a motion for a new trial and for judgment n.o.v. both of which were refused by the court below. This appeal is taken by her from the refusal of the court below to enter judgment n.o.v. in her favor.

The City of Pittsburgh did not ask for a new trial, nor appeal.

The parties to this appeal, Florence R. McCurdy, appellant, and the City of Pittsburgh, appellee, have stipulated that the question for decision by this court is: "Was there sufficient evidence produced at the time of the trial to show that Florence R. McCurdy assumed or had actual control and possession of the property as mortgagee, so as to make her personally liable in damages for injuries sustained by plaintiff due to a fall on the sidewalk?" We are of opinion that there was not.

George G. Turfley died on November 17, 1934, devising his estate to Fidelity and Mary Turfley, his widow, in trust to pay the income therefrom to Mary Turfley for life, with remainder over to their children. Included in the property so devised was the property abovementioned, No. 1712 Webster Avenue, Pittsburgh, upon which appellant held a mortgage. For a period of six to eight months after testator's death Mrs. Turfley collected the rents from this property, and with few exceptions turned them over to Fidelity, the co-executor and co-trustee; and thereafter for a short time, Fidelity collected the rents until it received a notice from the appellant under date of September 30, 1935, demanding the payment of all the income from the premises to her as mortgagee, stating, inter alia, that there was considerable interest due and delinquent, and that several years taxes were in default. Under date of October 11, 1935, Fidelity wrote appellant's attorney advising him that they did not feel warranted in turning over all of the rentals to the mortgagee, in view of the fact that the income was small in comparison with the trouble involved in the collection of the rents and management of the property. Appellant's attorney, under date of October 11, 1935, replied to Fidelity as follows: "When I served you with a notice that we required the rents to be paid Miss McCurdy on account of interest due her, it was not my intention that you

should be put to the trouble and expense of collecting the same, but Miss McCurdy will undertake to do that herself". However, she never actually did collect them. On April 30, 1938, due to the fact that the estate was insolvent and that the purposes of the trust could not be carried out, Fidelity notified the Examiner of Fiduciaries of the Orphans' Court of Allegheny County that it was abandoning the trust. In the record before us, it does not appear that Mary Turfley joined in this. Neither does it appear that Fidelity had any connection with the premises in question after receipt of notice from the mortgagee demanding payment of the rents therefrom. It does appear that Mary Turfley continued to collect the rents and turn them over to appellant's attorney intermittently for a period of about three years, or until November 7, 1938, when she appointed the Harris Real Estate Agency to collect the rents, make repairs, and turn over the balance monthly to appellant's attorney for application to the accrued interest and mortgage principal. Both Mrs. Turfley and appellant's attorney stated that this action had been recommended by the latter, for Mrs. Turfley was, by her own testimony, having difficulty collecting the rents. During the time that Mrs. Turfley collected the rents from October 1935, to November 1938, she arranged for necessary repairs and obtained new tenants. The Harris Real Estate Agency, after its appointment by Mrs. Turfley, forthwith proceeded to collect the rents promptly, make minor repairs, secure new tenants when necessary, enter into leases, and remit monthly to appellant's attorney, who applied the same on the past due interest account which was fully paid off at the time of trial of this case. A monthly statement was submitted by the Harris Company to appellant's attorney, but neither he nor Mrs. Turfley was consulted with reference to repairs, tenants, rent, etc. In August 1939, at the request of appellant's attorney, Mrs. Turfley authorized him to insure the premises for $4,000 and to pay the premium

of $35 out of the rents, and on March 28, 1942, she authorized him to pay the premium on a fire insurance policy which he apparently did. On August 4, 1942, she authorized and directed the Harris agency to pay the sum of $30 per month on delinquent taxes assessed against the property.

This court has held that a mortgagee in possession who exercises actual control and dominion over the property may be liable for injuries to third persons as a result of the negligent maintenance of the property. *Zisman, Exr. v. Duquesne City et al.*, 143 Pa. Superior Ct. 263, 18 A. 2d. 95. It was there said at pp. 268-9, "Admittedly, the city, in order to fasten liability on the trust company [mortgagee], had the burden of proving that it was in actual control and possession as mortgagee. It would be necessary for it to prove that the trust company [mortgagee] exercised those acts of dominion over the property, which an owner of similar property would do under the circumstances. These would include inspection of the premises, either personally or through an agent, making of repairs, arranging leases, collection of rents, eviction of tenants, payment of all expenses of maintenance, etc." The nature and extent of the activities performed by the respective *agents* in that case and this one are very nearly the same. There the case turned upon the issue, for whom was the agent acting—the owner or mortgagee? In view of the conflicting evidence it was properly a question for the jury and judgment n.o.v. was properly refused. However, in the present case there is an altogether different situation. The city called Mary Turfley as its own witness and at p. 34a the following testimony appears:

"Q. Who *ordinarily* [sic] put Harris in charge of the property?

"A. I did."

This testimony clearly indicates that Mrs. Turfley em-

ployed the Harris Real Estate Company as her agent. The various documentary authorizations and directions to both Harris Company and appellant's attorney corroborate this fact. They also negative any actual taking of possession and assumption of control of the property by appellant or her attorney. The mortgagee might have demanded of the tenants of the building that they pay the rent to her, or have brought ejectment or foreclosed the mortgage, but none of these was done. Instead, she very leniently followed a course which might ultimately create a favorable condition for Mrs. Turfley, the life tenant, and the remaindermen. The mere acceptance of rents from the agent of the former did not constitute that exclusive control and possession which is essential to impose liability upon the mortgagee. See *Zisman, Exr. v. Duquesne City et al.,* supra, p. 265-6, and cases there cited.

In spite of the fact that the testimony is oral, where a party's witness makes admissions as to certain material facts in issue favorable to the other party (as Mrs. Turfley did in direct examination as part of the city's case against the appellant) and there is no contradictory testimony by either party, such evidence may supply the basis for binding instructions, or judgment n.o.v., in favor of the adverse party. *Smith v. Penn Twp. Mut. Fire Ass'n,* 323 Pa. 93, 97-8, 186 A. 130; *Foell Packing Co. v. Harris,* 127 Pa. Superior Ct. 494, 498-9, 193 A. 152.

The judgment of the court below, in so far as it enters judgment in favor of the City of Pittsburgh and against Florence R. McCurdy, is reversed and is here entered for the appellant, Florence R. McCurdy.