## Chesonis v. Chesonis

*Charles M. Kschinka,* for plaintiff.

*Davis R. Hobbs, Robert L. Bennett* and *William J. Davis,* for defendant.

FARR, P. J., November 10, 1953.—On November 20, 1951, Alex F. Chesonis was operating his automobile in Colley Township, Sullivan County. He had as his guest his daughter, Rita K. Chesonis, an unemancipated minor of the age of nearly 20 years. Because of the rapid rate at which he was traveling, his car left the highway, overturned and killed both the operator and the daughter. The daughter's administratrix has sued the father's administratrix in trespass and under the first count the daughter's administratrix claims damage under the death statutes, and in the second count the administratrix claims to recover under the survival statute.

The motion is in the nature of a demurrer and raises the question: May such a suit prevail?

Of the death statutes, the first is the Act of April 15, 1851, P. L. 669, sec. 19, 12 PS §1601, as follows:

"Whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow, the personal representatives may maintain an action for and recover damages for the death thus occasioned."

The other is the Act of April 26, 1855, P. L. 309, sec. 1, as amended by the Act of June 7, 1911, P. L. 678, sec. 1, as amended by the Act of April 1, 1937, P. L. 196, sec. 1, 12 PS §1602, which is as follows:

"The persons entitled to recover damages for any injuries causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives; and that such husband, widow, children, or parents of the deceased shall be entitled to recover, whether he, she, or they be citizens or residents of the Commonwealth of Pennsylvania, or citizens or residents of any other state or place subject to the jurisdiction of the United States, or of any foreign country, or subjects of any foreign potentate; and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy, and that without liability to creditors under the laws of this Commonwealth. If none of the above relatives are left to survive the decedent, then the personal representative shall be entitled to recover damages for reasonable hospital, nursing, medical, funeral expenses, and expenses of administration necessitated by reason of injuries causing death."

The survival statute, the Act of April 18, 1949, P. L. 512, sec. 601, 20 PS §320.601 provides:

"All causes of action or proceedings real or personal, except actions for slander or libel, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants."

20 PS §320.603 provides:

"An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive."

As to the first count, we have no difficulty because we have the question settled for us in Minkin et al. v. Minkin, 336 Pa. 49, in which the late Mr. Justice Linn wrote the opinion, placing his decision upon the fact that the death statute was all embracing and did not exclude a suit by a child against the deceased parent. He states:

"The legislation is a declaration of public policy on the subject."

On page 52, he says:

"The public policy of a state is certainly indicated by its legislation. In Carpenter's Estate, 170 Pa. 203, . . . we said: 'How can there be a public policy leading to one conclusion when there is a positive statute directing a precisely opposite conclusion. . . . There can be no public policy which contravenes the positive language of a statute.' Northern Central Ry. Co. v. Walworth, 193 Pa. 207, 214 et seq., 44 A. 253."

There was a concurring opinion in this case in which Mr. Justice Stern now Chief Justice, could not concur with the theory upon which the court decided the case, but approved the result upon the theory that plaintiff was vindicating a property right.

Therefore, let us pass to the second count which is declared in consequence of the Survival Act. In Stegner, Admr., v. Fenton, 351 Pa. 292-93, Justice Drew states:

"In construing the 'survival' Act of 1937, this Court said, in Pezzulli v. D'Ambrosia, 344 Pa. 643, 647, 26 A. 2d 659, that the action brought under this statute 'is not a new cause of action at all, but merely continues in his [decedent's] personal representatives the

right of action which accrued to the deceased at common law because of the tort; the damages recoverable are measured by the pecuniary loss occasioned to him, and therefore to his estate, by the negligent act which caused his death.' "

It is argued by plaintiff that the same rights to sue without exception are given in the Survival Act as are provided in the death statutes. With this we agree. "Cause of action" is used in a restrictive sense, meaning, an injury caused by negligence, else why the words "or proceeding". "As though the decedent were alive." does not refer to parties to the suit but does mean that the same cause of action or proceeding shall continue as though decedent were living. The cause of action continues. The administrator may sue without restriction.

Under this act, had the daughter and her father both survived, there could have been no recovery however seriously the daughter might have been injured, and public policy would forbid the suit under such circumstances, the theory being that suit by an unemancipated minor against the parent would disturb the peace, good order and discipline of the family: Briggs et al. v. City of Philadelphia et. al., 112 Pa. Superior Ct. 50; Duffy v. Duffy, 117 Pa. Superior Ct. 500. But in this case the father is dead; his authority to be respected is gone and the person to be affected by such authority is dead.

Death completely changes the status of the parties. The Act of May 23, 1887, P. L. 158, sec. 5, cl. (c), 28 PS §317, is a declaration of public policy to preserve domestic tranquility. It positively forbids husband or wife testifying against each other. Numerous decisions (28 PS §317 footnote 9) hold that on the death of one, the survivor is fully competent, except as to confidental communications. Cessante ratione legis cessat, et ipsa lex. Plaintiff's administratrix is given authority

to sue under the Survival Act, and there are no exceptions other than suits for libel and slander. What possible interest can the State or society have in this situation? There is no element of fraud. Can we stretch an uncertain rule to deny recovery for a grievous wrong under these circumstances when the law always seeks a remedy for the wrong? I have said "uncertain rule" because in Minkin v. Minkin, supra, page 52, the court, speaking of the death statute, said:

"The legislation was a declaration of public policy on the subject and necessarily displaced any policy to the contrary, if, in fact, it existed."

In Dunlevy v. The Butler County National Bank, Admr., et al., 64 D. & C. 535, President Judge Laird holds that an unemancipated minor may not maintain an action of trespass for injuries sustained in an automobile accident against his parent or his parent's estate.

In Duffy v. Duffy, supra, Judge Baldrige states, quoting from Briggs et al. v. City of Philadelphia et al., 112 Pa. Superior Ct. 50:

" 'There never has been a common law rule that a child could not sue its parent. But, there is substantial decisional authority that it is not permitted, on the theory that it is disruptive of the family peace, destructive of the enforcement of discipline, and, therefore, against public policy. We recognize the wisdom of these rulings as the state and society are vitally interested in the integrity of, and harmony in, the family'."

The child may sue its parents or anyone else to vindicate its property rights and, so far as we can find, there is no law to the contrary anywhere. But the child may be raped by the father but, on the so-called grounds of public policy, may not maintain a suit (Roller v. Roller, 37 Wash. 242), or the father may brutally beat his minor child and be immune from suit: McKelvey v. McKelvey, 111 Tenn. 388. What family

accord or discipline can exist after such outrages? We doubt if any court in Pennsylvania, or indeed in those courts, would now deny the right to sue in case of willful and malicious injury of a child by the parent; at least such a suit will lie in the courts of New York: Siembab v. Siembab, 112 N. Y. S. 2d 82 (1952).

The rule of public policy is being whittled down everywhere. In Koontz v. Messer and Quaker State Oil Refining Co., 320 Pa. 487, the court held that a child may maintain a suit against the employer of the father on account of the father's negligent injury of his daughter. The father was brought upon the record as an additional defendant. Now this daughter and father knew that she must prove the negligence of the father to recover; they knew that the father was liable over and would be compelled to pay the judgment. The decision is placed upon the right to sue original defendant irrespective of the ultimate result. This is perfectly logical but it seems to us that the rule of public policy was there completely abandoned. The rule is not based upon bringing the suit, but upon maintaining it by testimony in open court against the parent and visiting upon him a judgment which might ruin him. These are elements promoting family discord.

In dealing with the subject, we must not forget that the so-called rule is an exception to the common-law rule that a child may sue the parent. We may not place the exception upon higher ground than the rule itself and say there may not be an exception to the exception.

"The minor has the same right to redress for wrongs as any other individuals. In the investigation of the subject, the starting point is a general right to demand reparation. The limitations which have been put upon that right have been deduced from prevalent ideas, touching family life, and especially parental rights and duties: And here, as one distinguished writer has put it, we 'are in the realm of belief and emotion' 43 Har-

vard Law Review, 1076. Opposing views have not infrequently been advocated with rhetoric rather than by reason. Out of it all there emerges one substantial and reasonable ground for denying a recovery, and one only. The parental authority should be so far supreme that whatever would unduly impair it should be foregone by the child for his ultimate good": Dunlap v. Dunlap, 84 N. H. 352, 71 A. L. R. 1055.

In Canada (Fidelity & Casualty Co. v. Marchard, 4 D. L. R. 157), the rule seems to be abandoned upon the theory that the right to redress a wrong is more important to society than this rule of public policy.

In Ohio (Signs v. Signs, 156 Ohio 566 (1952)) the court said:

"Ordinarily, tort actions by minor children against their parents in normal, harmonious families would be rare indeed because of the natural concern of the parents to adequately provide and care for their children, and where such actions were brought there would be a strong indication that there was no harmony or domestic felicity in the family involved to be disturbed.

"It seems absurd to say that it is legal and proper for an unemancipated child to bring an action against his parent concerning the child's property rights yet to be utterly without recourse with reference to injury to his person.

"It is difficult to understand by what legerdemain of reason, logic or law such a situation can exist or how it can be said that domestic harmony would be undisturbed in one case and be upset in the other."

In Georgia (Wright v. Wright, 85 Ga. App. 721, 70 S. E. 2d 152 (1952)), the court said the prior holding to the contrary was the result of textbook misconception.

In 39 Am. Jur. 736, §90, it is said:

"However, the rule, despite the long line of authority supporting it, has been subjected to considerable cri-

ticism in some of the more recent decisions, and the tendency seems to be to repudiate or modify it whenever its application is found to be out of line with modern conditions."

We hold that the suit may be maintained, first because the Survival Act provides for it without exception; second, that the rule that an unemancipated child may not sue his parent, does not apply where the parent and child are both killed in the same accident, due to the father's negligence.

Accordingly, the motion to abate the suit is overruled and denied and defendant is given 20 days to answer.