Ignatowicz, Appellant, v. Pittsburgh.

Argued October 14, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Ralph S. Davis, Jr.,* with him *Evans, Ivory & Evans,* for appellants.

*Thomas E. Barton,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 24, 1953:

This is an action of trespass brought by John Ignatowicz and his wife, Josephine, for damages on account of injuries received by the wife-plaintiff on March 18, 1950 when she fell on defective steps constructed by the City of Pittsburgh. Mrs. Ignatowicz owned and occupied certain property known and numbered as 35 Hartford Street, which abuts Hartford Street on the westerly side. Hartford Street is an open unimproved street 30 feet wide, within the City limits. A number of years ago, because of the very steep grade of the street, the City erected wooden steps in the middle of the cartway. By a general ordinance relating to streets not otherwise covered by special ordinance, 6 feet on either side of Hartford Street is reserved for sidewalks and 18 feet is set aside for cartway.

The steps in question were erected 13 feet from the western edge of the street; that is, they were not built in the 6 foot area reserved for sidewalk but had been constructed in what would normally be the cartway. The front wall of the wife-plaintiff's house and also the front walls of the adjoining houses along the street are built flush with the building line or western edge of the street.

Sometime prior to March 18, 1950 (no evidence was available exactly when), a porch was erected which extended 5 feet into the 6 foot area reserved for sidewalk. In front of the porch the 8 foot space extending out to the steps was fenced in by hedges and converted into a front yard. The wife-plaintiff fell when one of these steps contiguous to her yard gave way as she was descending the stairway. The present appeal is from the refusal of the lower court to remove the compulsory nonsuit which the trial judge granted on the ground that the plaintiffs were under a primary duty to repair this portion of the steps.

The plaintiffs now contend that the judgment of nonsuit should be reversed because they are not "abutting" or "adjoining" property owners since their house is isolated by a 13 foot strip of a dedicated, opened but unimproved street and that this isolated strip insulates them against the duty set forth by statute and ordinance to repair or maintain the City steps here in question.

The Act of May 16, 1891, P. L. 75, 53 PS §771, provides: "The municipal authorities may require sidewalks, boardwalks and curbstone to be laid, set and kept in repair, and after notice to the owner or owners of property to lay, set or repair such walks or stone in front of his, her or their property, and his, her or their failure to do so, the said municipal authorities may do the necessary work and assess the cost thereof upon the property of said owner or owners in front or along which said walk or curbstone so laid, set or repaired, shall be situate, and file a lien therefore or collect the same by action of assumpsit.".

In accordance with this statutory authority by Ordinance No. 161 of 1930 of the City of Pittsburgh, a duty was imposed on all owners of property abutting or adjoining streets to maintain all sidewalks in prop-

er and safe condition. Section 4 of the Ordinance provides: "It shall further be the duty of all owners of property abutting or adjoining streets to maintain all sidewalk pavements and curbing in proper and safe condition. In all cases where sidewalk pavements have not been laid on paved streets, or where sidewalk pavements, curbing and boardwalks and steps are not repaired or reconstructed in conformity with the requirements of this ordinance, by the owners of abutting or adjoining properties within 20 days after written notice to the owner or owners of said properties, or agents therefor, so to do, the Director of the Department of Public Works is hereby authorized and empowered to cause such construction to be made at the proper cost and expense of said owner, or owners, by contracts duly awarded, and entered into in accordance with the laws and ordinances governing the City of Pittsburgh, and upon completion of such construction and its acceptance by the Director of the Department of Public Works, the amount of the cost and expense of the same shall constitute a debt, municipal claim and lien against said owner or owners, in favor of the City of Pittsburgh.".

Although the rule might be to the contrary in other jurisdictions, in Pennsylvania it is well settled that the owner or tenant in possession is primarily liable and responsible for keeping in repair the sidewalk in front of the property owned or occupied by him. *Bruder v. Philadelphia et al.*, 302 Pa. 378, 153 A. 725; *Philadelphia v. Reading Co.*, 295 Pa. 183, 145 A. 65. The liability of the municipality in such a case is secondary. *Dutton v. Lansdowne Borough*, 198 Pa. 563, 48 A. 494; *Brady et al. v. Philadelphia*, 156 Pa. Superior Ct. 607, 612, 41 A. 2d 355.

Whenever this Court has had occasion to interpret the word "owner", in a statute or ordinance dealing

with liability for sidewalk repair, we have invariably construed it as meaning the *person in possession* as distinguished from the owner of the fee.

In *Briggs et al. v. Philadelphia,* 316 Pa. 48, 51, 173 A. 316, this Court said, "After full consideration of all prior cases, we decided in Philadelphia v. Merchant & Evans Co., 296 Pa. 126, and Bruder v. Philadelphia, 302 Pa. 378, that the owner in possession of a property is primarily responsible for a defective sidewalk in front of it, but if he is out of possession, because of a lease of the entire property, his liability ceases and the tenant is liable for injuries occurring to a third person because of a failure to repair a sidewalk; that the landlord is liable for defects existing at the time of executing the lease, but where the premises become defective, while in the occupancy and control of the tenant, he alone is liable . . . .". See also *Vinnacombe et ux. v. Philadelphia and American Stores Co. et al.,* 297 Pa. 564, 147 A. 826; *Koerth v. Turtle Creek Borough et al.,* 355 Pa. 121, 124, 49 A. 2d 398.

In *Baxter et al. v. Borough of Homestead, et al.,* 120 Pa. Superior Ct. 182, 187, 182 A. 68, the Superior Court said, ". . . where the entire premises are leased to one tenant, that tenant has undivided possession not only of the actual building, but also of such portion of the sidewalk as goes with it. It therefore may be natural and fair to assume that possession is to carry with it responsibility, and that the owner should consequently be relieved . . . .".

That liability is to be predicated upon possession and not upon title is further illustrated in the case of *Zisman, Exr. v. Duquesne City et al.,* 143 Pa. Superior Ct. 263, 18 A. 2d 95, where it was held that a mortgagee who is in actual control and possession of real property and who exercises those acts of dominion over

the property which any owner of a similar property would perform under the circumstances is liable over to the city for failure to maintain the sidewalk in proper condition. See also *Guyton et vir. v. Pittsburgh, McCurdy*, 155 Pa. Superior Ct. 76, 80, 38 A. 2d 383.

The rationale of all of these decisions is that the duty imposed upon abutting owners arises out of actual dominion and control over property adjoining a sidewalk rather than ownership of a fee in the soil. It is only just and reasonable to allow the risks and burdens incident to ownership to fall on those who enjoy benefits through occupancy and control. The plaintiffs in the instant case have for some undetermined number of years enjoyed a lawn and porch contiguous to these steps which afford the means of ingress and egress to and from their property, and it now comes with ill grace for them to disclaim liability because the intervening ground appropriated and occupied by them is laid out as a cartway.

This Court is of opinion, after careful consideration, that the steps possess the status of a sidewalk and that the plaintiffs, having exercised actual dominion and control of the land bordering on the steps, come within the definition of an abutting property owner. Primary liability for the maintenance of the steps in good repair attached to the plaintiffs, or at least to the wife-plaintiff owner, and neither has a right of recovery against the City which was only secondarily liable.

The judgment is affirmed.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The statute and ordinance quoted in the Majority Opinion speak of the duty of property owners abutting

or adjoining certain streets to maintain in proper repair sidewalks, pavements and curbing, but the instrumentality involved in this case is not a sidewalk, pavement or curb, nor does the property of the plaintiffs abut or adjoin such instrumentality, which happens to be an outdoor series of steps. Thirteen feet separate the plaintiffs' property line from the strip of land occupied by the structure involved.

Although, as a man walks or a crow flies, the distance of 13 feet is not far, it can divide proprietary rights with the definitive gap of a Grand Canyon. The law does not compromise with distances. If it did real estate boundaries would be as unfixed and unstable as a rubber railing.

The words *abut* and *adjoin* have a precise, undeviating meaning. " 'Abut' means to touch at the end; be contiguous; join at a border or boundary; terminate; to end at; to border on; to reach or touch with an end . . ." (Words and Phrases, Permanent Edition, Volume 1, page 191.) " 'Adjoin' means to be contiguous to; to be in contact with; to abut upon . . ." (Words and Phrases, supra, Vol. II, p. 393.) In legal terms and lay language, therefore, *abut* and *adjoin* can only mean to be in juxtaposition to. If a court decision will stretch the meaning of these words 13 feet, another decision can stretch them 13 yards or 130 yards, and in time the words will have no more precision than an elastic ruler.

I believe the lower court erred for another reason in granting a nonsuit. When the City defendant built steps in the middle of Hartford Street, it abandoned its right to assessment for the cost thereof against the property owners neither adjoining nor abutting that construction. By ordinance the City definitely laid aside 6 feet on either side of Hartford Street for sidewalks.

Then, violating its own ordinance and defying its own plans, it proceeded to ignore the sidewalk areas and invaded the very center of the cartway with wooden steps which it allowed to deteriorate into a dilapidated framework of peril to the community around.

The majority opinion states that it comes with ill grace for the plaintiffs to sue the defendant since they had for a time enjoyed a lawn and porch (neither of them on the plaintiffs' property) contiguous to those steps. But the City was responsible for the wife-plaintiff's mishap by inviting her to use an instrumentality which was decayed, rotted, weak and devoid of signs or lights warning the public of the danger underlying the treads climbing the steep grade of a public thoroughfare. As a consequence of this invitation, Mrs. Ignatowicz suffered serious injuries. Charging Mrs. Ignatowicz with "ill grace" is simply adding gratuitous insult to fortuitous injury. Under the Agreed Statement of Facts in the case the defendant City admitted that: "The defective condition of said step *existed for a long period of time, with direct knowledge of the City of Pittsburgh* of said defective condition as a result of petitions of the property owners for the repair of the same and direct contact in connection therewith with City council." (Emphasis supplied.)

The plaintiffs' property abuts on the western edge of Hartford Street. The steps are in the center of the street. This fact absolves the plaintiffs from any responsibility for the steps. But, assuming arguendo, that some financial accountability attaches to the plaintiffs for the construction of the steps, why should they be charged with any greater liability in this respect than the property owners along the western edge of the street? Wasn't the responsibility of the eastern proprietors equal at least to that of the western proprietors? And that being so, on what basis can Mrs.

Ignatowicz be *totally* deprived of the right to sue for injuries sustained through an improper maintenance of those steps?

The nonsuit entered in this case by the lower court left an ascending series of question marks, which, as I view it, have been added to by the majority opinion of this Court.

I dissent.