## Pintek *v.* Allegheny County et al., Appellants.

Argued April 14, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Before SOFFEL, J.

*John R. Bredin,* with him *Pringle, Bredin & Martin,* for County of Allegheny, appellant.

*Francis A. Muracca,* for Borough of Braddock, appellant.

*Anton W. Bigman,* for School District of Borough of Braddock, appellant.

*Benjamin Jacobson,* for individual defendant, appellee.

*Roslyn M. Litman,* with her *Litman & Litman,* for plaintiffs, appellees.

OPINION BY GUNTHER, J., June 11, 1958:

These appeals by the three taxing bodies are from the refusal of the court below to grant judgment n.o.v. and from the granting of a new trial to appellees against them.

An action in trespass was commenced by Raymond Pintek, a minor, by Joseph Pintek, his guardian, and Joseph Pintek and Mary Pintek in their own right against the County of Allegheny, the Borough of Braddock, the School District of the Borough of Braddock and Robert Ed. Keough to recover damages for injuries sustained by the minor plaintiff as he descended a fire escape on an apartment building at 400 Braddock Avenue, in the Borough of Braddock, which was titled in the three taxing bodies by virtue of a tax sale. On August 14, 1952, Raymond Pintek, who was then approximately 8½ years old, fell through a step which broke under him as he was descending a fire escape

and landed on the concrete below. As a result of said fall, he suffered a cerebral concussion, a fracture of both bones in each wrist, a laceration of the chin and multiple contusions of the body. The child was hospitalized for a week at the Braddock General Hospital where the lacerations were closed with sutures and casts were applied to both arms. After leaving the hospital, the minor child received treatments of heat and ointment on both arms. The X-rays taken shortly before the trial revealed a permanent deformity in the left arm caused by the accident. He had a limitation of supination (turning the hand over), being able to turn it approximately one-third of the normal arc. In addition, as a result of post-concussion syndrome resulting from the fall, he was treated for headaches which continue to persist.

The property involved was conveyed to the three taxing bodies on March 10, 1951 and possession, maintenance and control was in the taxing bodies. On March 5, 1951, the County of Allegheny by letter authorized a real estate agent to collect the rents which were to be applied toward the payment of taxes. Fire insurance covering the property was taken out in the name of the three taxing bodies. All tenants of the building were notified to pay rent to the real estate agent as the representative of the three taxing bodies.

On January 17, 1952, within a year from the date of sale, a petition for the redemption of the property was filed by Robert Ed. Keough as assignee of the mortgagee. On February 18, 1952, the court made a final order directing the three taxing bodies to convey the property to Robert Ed. Keough on payment of the proper redemption monies and the deed was actually delivered on August 27, 1952, twelve days after the accident. The rents collected were credited to the redemptor against the taxes of all three taxing bodies.

As early as July 2, 1952, the three taxing bodies were notified that another child had fallen on the same fire escape.

The trial commenced on November 20, 1956, and on November 23, 1956, the jury returned a verdict against the three taxing bodies in favor of the minor in the sum of $100. and parents in the sum of $499.50 and a directed verdict in favor of Robert Ed. Keough. Subsequently, the court below refused motions for judgment n.o.v. but granted the motion of appellees for a new trial on the ground of inadequacy. These appeals followed and after filing the appeals, the order granting a new trial was changed so as to grant the new trial only against the three taxing bodies.

Several questions are raised on this appeal and we shall take them up in the order raised.

(1) Are taxing bodies who acquire property jointly at a tax sale and who rent out the same liable for the tort of their agents and employees arising out of said ownership of the property? The determination of this question rests primarily upon ascertaining whether the taxing bodies here involved were engaged in a governmental or proprietary function in the administration of the building taken over. Initially, the theory of governmental function and the ensuing concept of immunity arising therefrom created such a roadblock for tortious conduct, as to preclude recovery regardless of consequences. Basically, this concept was grounded in the concept that political subdivisions and agencies of the Commonwealth enjoyed the privileges of the sovereignty and that, because the king could do no wrong, the subdivisions were also excused. Whatever may have been the logic behind this reasoning lost sight of the fact, however, that under our form of government only those rights were vested in government which were given to it by the people themselves.

Certain it is that the people of this Commonwealth never gave the sovereign a free reign to commit tortious acts and hide behind the cloak of immunity. This was assumed, right or wrong, as a means of practical expediency and convenience. Nevertheless, because of the ever increasing complexity of government, the stamp of approval was placed upon the immunity doctrine of governmental functions. As time progressed, it became increasingly more difficult to differentiate between what was historically a governmental function and what was claimed to be such with the ever increasing services assumed by the sovereignty and its political subdivisions. Somewhere along the line a differentiation had to be made if the wrongs to citizens were to be redressed. Thus in *Carr v. The Northern Liberties*, 35 Pa. 324 (1860), our Supreme Court enunciated the "discretionary-ministerial rule" which made the first major inroad on this concept. In *Briegel v. City of Philadelphia*, 135 Pa. 451, 19 A. 1038 (1890), Justice MITCHELL stated the broad principle of law applicable to land cases as follows: "The ownership of property entails certain burdens, one of which is the obligation of care that it shall not injure others in their property or persons, by unlawful use or neglect. This obligation rests, without regard to personal disabilities, on all owners alike . . . by virtue of their ownership, and municipal corporations are not exempt." Finally, in *Scibilia v. Philadelphia*, 279 Pa. 549, 124 A. 273, our Supreme Court enunciated the concept of governmental functions versus proprietary functions with the rule that municipal corporations were liable for torts committed in the course of their proprietary functions.

The basic test in determining whether an activity is governmental or a proprietary function has also been determined by our Supreme Court. In *Hartness v.*

*Allegheny County,* 349 Pa. 248, 37 A. 2d 18, this test was enunciated as follows: "Surely the answer to plaintiff's contention is that it is the predominant nature of the activities carried on within the building which must determine his right of recovery; the controlling question is whether the principal use of the structure is for the conduct of proprietary and business operations or whether these are so relatively incidental and unimportant as not to deprive the building of its general character as a Court House."

It is contended that the three taxing bodies in acquiring possession and control of the property here involved were collecting taxes which is a proper exercise of a governmental function. Further, it is contended that actual title did not vest in the taxing bodies because it was subject to redemption within a year after the sale. It cannot be denied that the collection of taxes is a governmental function. However, there is a clear distinction between the collection of taxes as such and the acquisition of property which is then commercially rented. When real estate is exposed to public sale for the non-payment of taxes, there is no inexorable demand that the taxing bodies bid in the property. But when they do, the status changes from that of collection of taxes to that of ownership of property, subject only to the possibility that the title acquired may be defeated upon the exercise of the equity of redemption. The taxing bodies, upon exercising this privilege, change their status from that of collectors to that of owners and possessors and the property so bid in is the equity for taxes which the owner must pay upon redemption. If the property is not redeemed, title remains in the taxing bodies and not subject to any taxes until again sold and placed upon the tax rolls. Furthermore, the Act of 1941, P. L. 536, section 1, 72 P.S. 6151.1 provides:

"Whenever any real property has been heretofore or shall be hereafter sold at any public sale for the nonpayment of taxes or municipal claims due any county, city, except city of the first class borough . . . school district . . ., any two or more of such political subdivisions or the Commonwealth having tax or municipal claims against such real property may, by agreement . . . and in the event there are no other successful bidders at such sale, agree to take title to such real property jointly in proportion to their tax claims, and on the bid of any one of them, regardless of the amount bid at such sale."

Section 2 of the same Act, 72 P.S. 6151.2, provides:

"Such agreement between said subdivisions aforesaid may provide for the appointment of a manager or agent of such real property, the application of the rents or income from such real property to the payment of compensation or commission to such manager or agent, to repairs, fire insurance, liability insurance, or such other expense necessary to the maintenance of such real property, as well as the payment of any balance to such political subdivisions in proportion to their interests, or as such agreement may provide, or make any other arrangements in connection with said real property as they deem to be best for their mutual interests: . . ."

Under the Act cited, there is no requirement that such property be taken by the taxing authorities. The ownership of such property is purely a voluntary choice and the taxing bodies may determine for themselves whether to become owners of such property. In the event they do not choose to become owners, and in the event there are no bidders at the first sale, the property may be resold at a later time and the taxes collected at that time. As stated before, this phase is tax collection—a governmental function; the phase of

taking title to such property is a proprietary function. The Act also recognizes, for the protection of the taxing bodies, the right to place fire insurance, liability insurance and the right to make repairs.

The taxing bodies, upon assuming possession and control, hired an agent for the collection of rents, directed that fire insurance be placed on the premises, instructed tenants to pay rent to their agent, and generally exercised management and control of the property. It was conducting a business operation on the premises as distinguished from a governmental operation. Thus, by electing to take title, management and control, they hoped to better their position over and beyond that of delinquent taxes due, subject only to the limitation that the property might be redeemed.

The School District contends, however, that even if the other two taxing bodies might be deemed to be conducting a proprietary function as distinguished from a governmental function, it is still immune from liability because of its peculiar status. It argues that the sole function of a school district is to provide residents with proper education and that all its acts are governmental. The answer to this contention is that the school district of modern vintage exercises many functions which cannot be considered as governmental but, rather, proprietary. Thus, for example, in *Hoffman v. Scranton School District*, 67 D. & C. 301, it was held that the conduct of a football game attracting spectators for pay is a proprietary function for which the school district assumes the risk which accompany such activity. Furthermore, the school district here had the same benefits and the same obligations as the other two taxing bodies. It took title jointly with the other taxing bodies and, in contemplation of law, was a tenant in common, and, as such, had the right, benefit and use of the property. See *Peterson et al. v. Mc-*

*Neely,* 125 Pa. Superior Ct. 55, 189 A. 765. It had the right, by statute, to protect itself against liability for tortious conduct by obtaining liability insurance. It, therefore, cannot claim the benefits of a transaction and deny liability in connection therewith. We have examined the cases cited in support of this proposition of immunity and find that all of them are clearly distinguishable from the instant case.

We therefore conclude that the three taxing bodies are liable for the tort of their agents and employees on the basis that the operation here conducted was a proprietary function.

(2) Does the fact that proceedings have been instituted to redeem the property vary the liability of possessors against a third party? The taxing bodies contend that since redemption proceedings have been instituted for this property, they have no liability for torts committed during the course of redemption proceedings. The Common Pleas Court of Allegheny County, on February 18, 1952, authorized Robert Ed. Keough to redeem the property in question based upon a petition presented on January 17, 1952. The authorization to redeem, however, was conditioned "on payment of the correct amount of redemption money due." Redemption is not complete until the money due, the taxes due, are paid. *School District of Blythe Township v. Mary-D Coal Mining Co., Inc.,* 354 Pa. 407, 47 A. 2d 535. Until the total redemption amount is paid, the redeemer has no right to title, possession or control as against the taxing bodies. In the meantime, liability for negligent maintenance of real estate follows possession and control. *Ignatowicz v. City of Pittsburgh,* 375 Pa. 352, 100 A. 2d 608; *Guyton v. City of Pittsburgh,* 155 Pa. Superior Ct. 76, 38 A. 2d 383; *Bagley v. Philadelphia,* 148 Pa. Superior Ct. 318, 25 A. 2d 579.

Regardless of any other rights which the holder of the equity of redemption might have, we simply hold that the person having possession and control of the premises at the time of the accident is legally responsible for such consequences and this liability does not change simply because redemption proceedings have begun but were not completed at the time of such accident.

(3) Did the court below abuse its discretion in granting a new trial? The court below granted a new trial to the plaintiffs on the grounds that the verdict of the jury was inadequate and that there was error committed in not charging the jury that they could find future loss of earnings for the minor plaintiff in awarding damages. In *Barker et al. v. Reedy*, 167 Pa. Superior Ct. 222, 74 A. 2d 533, we stated that the power of the court below to set aside a verdict on the ground of inadequacy may be exercised whenever it appears that the amount is patently insufficient. Considering the award of the jury and the failure to charge on the question of the impairment of earning capacity, it was clearly within the sound discretion of the court to grant a new trial. We find no abuse of discretion here.

(4) Finally, it is contended that the court below had no power to modify the order granting a new trial, excluding the defendant Robert Ed. Keough, after an appeal had been filed and certiorari from this Court had been filed in the Prothonotary's Office. The verdict of the jury was in favor of this defendant and the court below inadvertently did not exclude him. This amended order in no way changed the previous order but merely clarified it, as to matter of form, in accordance with the verdict of the jury. This modification in no way prejudiced appellants and, when the original order was entered, this defendant was no longer

a party to the proceedings. We see nothing improper in this regard under the circumstances.

The orders of the court below are affirmed.