# CHARLESTON.

### STATE *ex rel.* PLANT v. BOARD OF COMMISSIONERS OF OHIO COUNTY.

### Submitted May 1, 1917.   Decided May 15, 1917.

1. COUNTIES—*States—Liability—Power of Courts.*

     The courts of this state have no inherent power or authority to create liability upon county funds or the state treasury. Their authority to do so must be derived from statute. (p. 510).

2. SAME—*Expenditures—Statute—"Crime."*

     Sec. 21, Ch. 13, Acts 1913, known as the Prohibition Act, (Sec. 21, Ch. 32A, Barnes' Code,) authorizes the expenditure of county funds only for the purpose of the apprehension of persons charged with, and detection of violations of the prohibition statute. The word *crime*, employed in said section, does not embrace crimes in general, but only such violations of the prohibition statute as are made criminal. (p. 509).

3. SAME—*Expenditures—Medical Fees—Authority.*

     There is no statute in this state authorizing payment out of the county fund of special fees to a physician for services performed by him in making physical and mental examinations and tests of a prisoner, charged with the crime of murder, in order to be the better qualified to testify and for testifying as an expert, on behalf of the state, upon an inquiry concerning the prisoner's sanity. (p. 508).

(POFFENBARGER, JUDGE, absent).

Original mandamus by State on the relation of Dr. E. B. Plant against the Board of Commissioners of Ohio County and others.  *Writ refused.*

D. A. *McKee* and H. A. *Nolte*, for petitioner.

F. W. *Nesbitt* and *Jno.* T. *Simms*, for respondents.

WILLIAMS, JUDGE:

The alternative writ alleges that, at the November.term, 1916, of the criminal court of Ohio county, Henry Able was indicted for the murder of his wife, and pleaded not guilty; that being advised of the purpose of the defense to prove by expert witnesses the insanity of the prisoner, the criminal court, on motion of the prosecuting attorney, directed an inquiry into the fact of his sanity; that it became and was necessary and material to employ expert alienist, on behalf of the state, to ascertain the true mental condition of the prisoner, and thus be prepared to express an intelligent opinion as a witness for the state when the inquiry should be made, and being without the means of having such investigation made, in advance of the inquiry, by men learned in medical science, the prosecuting attorney arranged with relator for a special fee in the event he would so qualify himself to testify as an expert; that relator is a member of the Ohio County Medical Society, the rules and regulations of which forbid its members to qualify themselves as expert witnesses in particular criminal prosecutions without special pay therefor; that in order to be positive of the sanity or insanity of a person it is necessary for a physician to make a number of physical and mental tests, and to acquaint himself with the patient's family history for preceding generations, respecting certain diseases and mental weaknesses; that in pursuance of the arrangement with the prosecuting attorney relator made physical and mental tests of the prisoner and examined into his family history, and thereafter testified in the case as a witness for the state, and presented the bill for his services, based upon the minimum fee fixed by the aforesaid medical society in such cases, aggregating one hundred and fifty dollars, which was approved by the prosecuting attorney; that the judge of the criminal court thereupon entered an order directing the claim to be paid out of the state treasury, and the auditor of the state refused payment thereof; that the criminal court then entered the following order, viz:

"This day came E. B. Plant and presented his bill for One Hundred and Fifty ($150.00) Dollars for expert witness fees in the matter of the *State* vs. *Henry Able,* an insanity

issue, the said Henry Able being then charged in this Court with first degree murder, and it appearing that the same was previously ordered paid out of the State Treasury and not having been accepted or paid out of the State Treasury, it is considered and ordered that the same be paid out of the Treasury of the County of Ohio, and it is further considered and ordered that the same be certified by the Clerk of this Court to the Commissioners of Ohio County for payment.'' The relator presented a certified copy of this order to the Board of Commissioners of Ohio county and demanded payment, and said board refused and declined to pay it, wherefore relator has applied to this court for a writ of mandamus to compel payment.

There is no return denying any of the foregoing facts, and demurrer and motion to quash the alternative writ present the questions, whether the criminal court, having charge of the prosecution of the prisoner, had authority to make such order, and whether there is any justification or authority in law for its payment by respondent out of the county fund of Ohio county.

Counsel for relator relies on section 21 of chapter 32A, Barnes' Code, as authorizing payment of the claim. That statute reads as follows:

''The prosecuting attorney of any county, with the approval of the governor, or of the court of the county vested with authority to try criminal offenses, or of the judge thereof in vacation, may, within his discretion, offer rewards for the apprehension of persons charged with crime, or may expend money for the detection of crime. Any money expended under this section shall, when approved by the prosecuting attorney, be paid out of the county fund in the same manner as other county expenses are paid.''

It was first enacted in 1913, as a part of chapter 13 of the Acts of that year, known as the Prohibition Act, the title to which act is as follows:

''AN ACT to prohibit the manufacture, sale and keeping for sale of malt, vinous or spirituous liquors, wine, porter, ale, beer or any intoxicating drink, mixture or preparation of like nature, except the manufacture, sale and keeping for

sale for medicinal, pharmaceutical, mechanical, sacramental or scientific purposes, and the manufacture and sale of denatured alcohol for industrial purposes as regulated and provided for by this act; and to enforce the amendment of section forty-six of article six of the state constitution, ratified on the fifth day of November, one thousand nine hundred and twelve; and making the state tax commissioner *ex officio* state commissioner of prohibition, and defining his duties; and providing for the enforcement of this act and prescribing penalties for violations thereof.''

The purpose and scope of the entire act are here clearly defined and limited, and its numerous provisions must necessarily be confined within that scope. The title does not mention, as a purpose of the act, the offer of rewards, or expenditure of money for the detection of crimes, and to provide for the payment thereof. Hence, unless said section is germane to the subject set out in the title, the section is unconsitutional. Section 30, article 6 of the Consitution reads as follows:

''No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed.'' All the states have similar provisions in their respective constitutions, and they are almost universally held to be mandatory. *Stewart* v. *Tennant*, 52 W. Va. 559, and 1 Lewis' Sutherland Stat. Cons., (2nd ed.), secs. 112-114.

''Whatever may be the scope of an act, it can embrace but one subject, and all its provisions must relate to that subject; they must be parts of it, incident to it or in some reasonable sense auxiliary to the object in view. That subject must be expressed in the title of the act. The constitutional requirement is addressed to the subject, not to the details of the act.'' Lewis' Sutherland Stat. Constr., sec. 118.

Section 21, chapter 32A, is clearly consistent with the general purpose and object expressed in the title of the act, provided, however, the term ''crime'', as therein used, be limited to include only such violations of law as are made crimes by the particular statute in question, for one of the purposes

expressly mentioned in the title is to prescribe penalties for the violation of the act and to provide means for its enforcement. To give the term a more extensive meaning, so as to make it include all classes of crimes, would be to make the particular section broader and more comprehensive than the title of the act and the section repugnant to the constitution. The term must, therefore, be limited to those offenses made criminal by the prohibition statute, and the expenditure of money for the apprehension of criminals and the detection of crimes, to the particular class of criminals and crimes therein defined. The general intent and purpose of the legislature being obvious from the title to the act, general words may be restrained, and words of narrower import may be expanded so as to embrace or effectuate that intent. ''When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention.'' 2 Lewis' Sutherland Stat. Constr., (2nd ed.), sec. 347. Here it is necessary to restrict the meaning of the word crime, which is one of general meaning, in order to avoid repugnancy with the intention described in the title of the act.

The courts of this state have no inherent power or authority to create liabilities upon the county fund or the state treasury. The authority to do so must be found in some statute. We know of none, and are cited to none which authorized the criminal court of Ohio county to direct payment of relator's fees for services in obtaining information to be thereby the better qualified to testify authoritatively as an expert witness on behalf of the state upon an inquiry into the sanity of a person charged with the commission of a crime.

Moreover, sections 3 and 4, chapter 16, Acts 1904, make it unlawful for any county court to expend any money or incur any obligation not expressly authorized by law. Instead of being the duty of the Board of Commissioners of Ohio county to pay relator's fees, it is expressly prohibited from doing so. *County Court of Tyler County* v. *Duty*, 77 W. Va. 17, 87 S. E. 256.

We have no doubt the services rendered by relator were material and important to the state in the particular case,

and that his fees therefor are reasonable and morally just, but the legislature is the only body which has authority to provide for their payment. We are constrained to refuse the writ.

*Writ refused.*