# Armory Commission v. Palmer et al.

(Decided March 16, 1934.)

BAILEY P. WOOTTON, Attorney General, ELLERBE W. CAR-
TER and RICHARD T. VON HOENE for appellant.

B. CASTLE and JOHN NORTHCUTT for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing.

Rose Palmer and Louis N. Palmer, her husband,
brought this action in equity against the armory com-
mission of Kentucky on April 26, 1932, alleging that on
September 15, 1926, a lease was made by them to the
defendant, and that by mistake of the parties certain
words were left in the lease which by agreement were
to be left out, and praying that the lease be amended
and reformed by striking therefrom the words in ques-
tion. The allegations of the petition were denied by
answer. Proof was taken, and on final hearing the cir-
cuit court adjudged the plaintiff the relief sought. The
defendant appeals.

The first and second clauses of the lease are in
these words:

"1. That the lessor hereby leases to the lessee
for use as an armory, stables and drill ground for
the term beginning with the 15th day of September,
1926, and ending with the 15th day of September,
1936, one combined garage, work shop and tank

park at 307-309 East 47th Street, Covington, Kentucky, as shown on attached plans.

"2. That the lessee shall pay the lessor, as rental for the use of said premises three hundred and ninety dollars [$390.00] each three [3] months; should the premises be relinquished before the close of a semi-annual period, the rental for the last period shall be only the pro rata part of the semi-annual rental, depending on the time of occupancy."

The words alleged to have been left in the lease by mistake, which the circuit court struck out by its judgment, are these:

"Should the premises be relinquished before the close of a semi-annual period, the rental for the last period shall be only the pro rata part of the semi-annual rental, depending on the time of occupancy."

The facts shown by the proof are these:

The plaintiff owned a lot in Covington. Their residence was on the front of the lot. The armory commission wanted a place to store tank cars, etc., in Covington, and in May, 1926, an agreement was made as below stated between the plaintiffs and the armory commission by which the commission agreed to rent such a house from the plaintiffs if they would build a tank house on the back of their lot, and a lease was drawn up which was later signed by Louis Palmer, but not by his wife, and he returned it to James A. Kehoe, then the adjutant general of the state and the secretary of the armory commission, stating in his letter that this was not the contract they had agreed on, in that it was a lease only for five years when the contract was a lease for ten years; also that in the first clause of the contract it was provided that it might be terminated at any time on sixty days' notice by the armory commission, and that this was not in the contract. After getting this letter from Louis Palmer, a new lease was drawn up on the same form, omitting the words in the first section of the contract about terminating it on sixty days' notice and leaving that section as above quoted. No change was made in the second section of the contract, and in this condition it was signed by Palmer and wife and by the armory commission by Kehoe, and was recorded. The armory commission took charge of the property after the house was completed in August, 1926, and held it until March, 1932, but in December, 1931, they gave

notice that they would vacate it. It ceased to pay the rent after March 15, 1932, having vacated it on March 1.

It was shown by the plaintiffs that they built the house under the contract after it was agreed on, at an expense of about $14,000, and that they would not have built the house but for the contract, under which they were to get $130 a month as rent, and the term was to be ten years. Kehoe, who was a witness for the plaintiff, testified in substance that, after getting Palmer's letter, he left out the words in the first clause of the lease providing for sixty days' notice, and in substance stated that the words in the second clause were not changed by inadvertence. On the other hand, several members of the commission testified very positively that they all knew that they would have no use for the building if the statute was changed, and that they made no contracts and authorized none for a definite term without the power of ending it in case they could not use the property longer under the statute. In other words, their power was entirely statutory, and they could not tell how long the state would authorize them to hold the property. They approved the original contract, but they had no notice of anything that took place between Kehoe and Palmer after that. The new lease, which he executed, was never brought before the board, and they had no information that there had been any change in it. Kehoe was only a member of the board, and had no power in himself to make a contract. But on November 22, 1926, the board entered an order approving all leases that Kehoe had made. When they made this order, they did not know that any change had been made in the lease, and it is insisted for the armory commission that they simply approved by this order the leases which they had authorized to be made; that, in any view of the construction of the order, it authorized nothing more than the leases which Kehoe had in fact made, that is, it authorized the lease in question as it then read, with Kehoe's signature to it, for the board by this order had no intention of authorizing anything that it had never heard of, and it, at least, only authorized the lease which Kehoe had in fact signed.

The armory commission is created by section 2711a-128, Kentucky Statutes, which provides:

"There is hereby created a body corporate to be known as the armory commission of Kentucky, the members of which shall be the governor, who shall

be chairman, the adjutant general, and the three highest ranking officers on the active list of the Kentucky national guard."

The following rules are well settled:

"All contracts made with the state are subject to the provisions of the existing law and the state is not liable for loss to contractors growing out of an alleged improper administration of that law by the executive officer." 59 C. J. sec. 324.

"Any power to create a liability upon the State Treasury must be derived from the statute." 59 C. J. sec. 335.

Accordingly, this court has steadily held that the state never becomes a debtor by implication, and that, in order to show that the state is responsible, the claimant must show a legal obligation on the part of the state. Allin v. Mercer County, 174 Ky. 566, 192 S. W. 638; Clay County Board of Education v. Lewis, 187 Ky. 231, 218 S. W. 716, and cases cited.

The armory commission, on May 12, 1926, made an entry approving the following lease: "Covington, Kentucky. Capt. and Mrs. Palmer—$130.00 per month."

This was the paper which Mrs. Palmer declined to sign, and they sent back to the adjutant general. He then, without any further action by the board or the other members of the board knowing anything about it, drew up the lease of September 15, 1926, and it was signed by all the parties and recorded. On November 23, 1927, the board entered this order:

"The commission then unanimously approved the signing of all Armory leases by the adjutant general in the amounts previously approved by the said commission and as contained in the minutes thereof. Covington. Rose Palmer and L. N. Palmer, $130.00 a month."

This, at least, was nothing more than an approval of the written lease which the adjutant general had signed. The commission, in making this order, knew nothing of any mistake in the lease or any agreement between the adjutant general and the parties. This was not an approval of anything that had occurred between the adjutant general and the Palmers without the knowledge of the board. Only the board could make a contract for

the state. There is no misunderstanding between the Palmers and the board. The state is only bound by the action of the board. The state is not liable to the Palmers for any negligence of the adjutant general, and the contract cannot be reformed for any mistake he made, which the board knew nothing of. By the express provisions of the statute all contracts creating liabilities on the armory fund require the affirmative vote of a majority of all members of the commission. Clearly here there was no action of the commission approving the contract without the words in question. The fact that the Governor afterwards signed the paper added nothing to the rights of appellees, for he simply signed the paper as written without any knowledge of the other facts now relied on.

On the admitted facts the circuit court should have dismissed the plaintiff's petition.

Judgment reversed, and cause remanded for a judgment as above indicated.