CITY OF FT. SMITH *v.* FRANCE.

5-2542                                      353 S. W. 2d 186

Opinion delivered January 15, 1962.

[Rehearing denied February 19, 1962.]

*B. Byron Dobbs,* City Attorney, for appellant.

*Ralph W. Robinson* and *David O. Partain,* for appellee.

GEORGE ROSE SMITH, J. In 1958 the city of Fort Smith bought from the appellees, Charlie France and his wife, a small tract of land near Lake Fort Smith, which is the municipal water supply. Two years later the sellers brought this suit to reform the deed, contending that by mutual mistake the description included more land than they meant to convey. This appeal is from a decree granting the prayer for reformation. For reversal the city contends that no mutual mistake existed, for the reason that the city commissioners intended to accept

the deed in the exact form in which it was presented to them by the sellers.

France owned several acres near the lake. In negotiating the sale in question he talked only with John Luce, the superintendent of the city's water department, and with Ira Cole, the caretaker of the lake property. France testified that he proposed to sell to the city his garden lot, which was completely enclosed by a fence and contained 1.3 acres. He says that during the negotiations he showed this enclosed parcel to Luce and Cole, who understood that it was the property being offered to the city. We have some difficulty in following the testimony, because the witnesses repeatedly referred to a plat that was not introduced in evidence and is not before us. As we understand the proof, however, the chancellor was not in error in finding that the plaintiffs proved by clear and convincing evidence that Luce and Cole thought that the city was buying the enclosed garden lot.

After Luce had examined the property he suggested that France have a deed prepared so that it could be tendered to the city commissioners. France accordingly went to an abstract office, where the abstracter, apparently after consulting his records, prepared a deed containing this description of the land being conveyed:

"All that part of the Southwest Quarter of the Northwest Quarter of Section 30, Township 12 North, Range 29 West, which lies East of the Shepherd Springs Road as now located over and across said forty, and North of that part of said forty owned by the City of Fort Smith, and that part of said forty owned by Joe G. Bennett and others and described in deed to them, of record in the office of the recorder of Crawford County, in Deed Record 178 at Page 52."

This description was erroneous in that it described a total of 3.9 acres instead of the 1.3-acre lot that France meant to offer the city. France and his wife executed the deed and delivered it to the office of the municipal water department. A few days later the purchase was approved at a meeting of the city commissioners (Fort

Smith has a commission form of government), and the purchase price of $3,000 was paid. The chancellor reformed the deed to describe only the garden lot instead of the entire 3.9 acres.

It is conceded that Luce and Cole did not have the power to bind the city by contract. That authority rested solely in the board of commissioners. Upon that premise the city insists that its authorized agents could not have acted under a mistake. The commissioners did not inspect the land and are not shown to have known that the sellers meant to convey the garden lot only. Hence, it is argued, the commissioners must be taken to have intended to purchase the 3.9 acres described in the deed they accepted.

This argument might have merit if the deed had specifically and intelligibly described 3.9 acres, so that it could be said that the commissioners knew that the city was to receive that quantity of land. Such a patent factor was involved in *Armory Comm.* v. *Palmer,* 253 Ky. 425, 69 S. W. 2d 681. There the Palmers negotiated with the adjutant general in an effort to lease their land to the state armory commission. The Palmers and the adjutant general intended for the lease to be absolutely binding for a ten-year term, but by mistake a provision was inserted which empowered the state to terminate the lease at the end of any semiannual period. The lease was approved by the armory commission, which had the sole power to act for the state. Several of the commissioners testified that they would not have approved the lease if it had not contained the clause permitting the state to terminate it before the expiration of the term. The court properly held that the adjutant general's mistake was not attributable to the commissoners, for they were unaware of it and consciously intended for the cancellation provision to be included in the contract.

The case at bar differs from the one just cited in that here the city commissioners could determine nothing whatever about the size or shape of the land merely by reading the erroneous description in the deed. The

tract was described simply as that part of the forty lying east of Shepherd Springs Road and north of property owned by the city and by Bennett and others. Within the limits of such a description the tract might vary in size from a fraction of an acre to almost the entire forty. Hence the commissioners could not have learned from the language of the deed that the city was to receive 3.9 acres. Only one of the commissioners testified at the trial, and he did not even intimate that he approved the transaction with the conscious realization that the city was to obtain 3.9 acres.

The proof is not as complete as it might be, but we may fairly infer from the record that Luce, who had viewed the garden lot, recommended its purchase to the commissioner in charge of public works, and he in turn recommended it to his fellow commissioners. Obviously the board did not blindly authorize the expenditure of $3,000; so one of two possibilities must have existed. First, Luce may have informed the board, through the commissioner of public works, that the city was being offered the enclosed garden lot. In that case the board consciously shared France's mistake in thinking that the deed described only that lot. Secondly, Luce may have merely recommended the purchase as a desirable one for the city, without describing the land in detail. In that case the commissioners unquestionably meant to purchase the land that Luce had in mind when he made his recommendation. Any other view of the matter leads to the absurd conclusion that a mutual mistake was an impossibility in the circumstances, so that the city could not have obtained reformation even if the deed had erroneously described a few square feet of nominal value instead of the garden lot that was really the subject of the contract.

The city relies mainly upon *Fagan* v. *Graves,* 173 Ark. 842, 293 S. W. 712. There a mother and son were engaged in litigation about the ownership of two lots standing in the son's name. They agreed to compromise their dispute by dividing the property. The son had stepped it off and thought that if he retained one lot

and six feet off the side of the other he would acquire the land upon which a small building was situated. The son's deed to his mother was so prepared and executed, but it later developed that he had been mistaken, that the six-foot strip did not include all of the building. In affirming the chancellor's refusal to reform the deed we observed that the son's proof of mutual mistake was not clear, decisive, and unequivocal.

As we interpret that case the mother's dominant intention was open to question. If she meant to release the site of the building, whether or not it was correctly described in the deed, then a reformation would have been proper. On the other hand, if she meant to release only the six-foot strip, regardless of the location of the building, then there was no mutual mistake, for she did what she intended. By contrast, in the case at hand the commissioners could not have understood that the city was getting title to 3.9 acres, for that information was not supplied either by the bare language of the deed or by Luce. Hence the chancellor properly reformed the instrument to correct what was actually a mutual mistake.

Affirmed.