WOLFE, CUSTODY, IN RE.

Juvenile Court, Preble County.

No. 2153. Decided April 16, 1962.

168

170

*Messrs. Bennett & Bennett*, for applicant.
*Messrs. Dye & Ernst*, for movant.

ZEIGEL, J.  Thomas Wolfe, the father of Rhonda Rae and Jeffrey Lee Wolfe, has applied for an order of custody of his minor children.  Personal service was had upon Correll Esquibel, their mother, who thereupon moved for dismissal on the ground that the court lacked jurisdiction to hear the cause. Testimony was presented concerning this motion, and the following facts appear as found by the Court:

Thomas and Correll were married in California in 1954, while Thomas was in the U. S. Navy.  They were living in California when they separated in 1959.  Upon separation the children remained with their mother in that state.  Correll obtained an interlocutory divorce decree from Thomas in the Superior Court of the State of California in and for the County of Alameda on December 21, 1960, which decree awarded custody and control of the two minor children to Correll, with reasonable rights of visitation reserved to Thomas.  A copy of that decree was admitted into evidence by agreement, and from it, it appears that Thomas was duly served with process, although he

was not within the jurisdiction of the court. This interlocutory decree was made final on December 22, 1961, and its terms relative to the custody of the children were declared binding on the parties.

In the meantime, subsequent to the separation, Thomas returned to Preble County, Ohio, where he had resided prior to his entering the armed services. In September, 1961, then being in poor health, Correll wrote to Thomas's sister, seeking her assistance with the children so that she might recover her health. On September 19, 1961, Correll arrived in Preble County with the children and left them with Thomas's sister. While it appears from the testimony that no definite plans were then made as to the proposed length of stay of these children in this County, the Court finds that it was generally understood between all concerned that these arrangements were temporary.

When Correll returned to Preble County from California in March, 1962, for the purpose of taking the children back to California, she was personally served with process in connection with the instant application, the same having been filed a few days before she arrived.

The jurisdiction of the juvenile court as applicable to the present situation is set forth in Section 2151.23, paragraph (A), Revised Code, as follows:

(A) The juvenile court has exclusive original jurisdiction under the Revised Code:

(1) Concerning any child who is a juvenile traffic offender or who is delinquent, neglected, dependent, crippled, or otherwise physically handicapped;

(2) To determine the custody of any child not a ward of another court;

(3) To determine the paternity of any child alleged to have been born out of wedlock, subject to the concurrent jurisdiction of other courts;

\* \* \* \*

Jurisdiction, as defined in *State, ex rel. Ellis,* v. *Supervisors,* 70 Ohio St., 341 at page 349, is the power to hear and determine the subject matter in controversy between the parties. See also *Crum* v. *Howard,* 1 Ohio Opinions (2d), 399, 137 N. E. (2d), 654. This court has the power to adjudicate in the case at bar, if at all, under the provisions of Section 2151.23(A)(2),

Revised Code. There is neither any allegation in the primary pleading before this Court to the effect that the children in question, or either of them, are juvenile traffic offenders, or are delinquent, neglected, dependent, or crippled, or are otherwise physically handicapped; nor is the question of their paternity brought into issue. Further, these three subsections under paragraph (A) are independent of each other. Each one of them is a grant of jurisdiction, not a limitation thereof, and it is not necessary that this Court first determine that the children are delinquent or neglected, etc., before making an award of their custody, if it has the power under the facts here presented to make such an award. *In re Torok*, 161 Ohio St., 585, 53 Ohio Opinions, 433, 120 N. E. (2d), 307. Thus, the sole question here is the meaning of the General Assembly's grant of power to the juvenile court "to determine the custody of any child not a ward of another court."

A proper understanding of this question requires a slight digression into the basic nature of the juvenile court and its jurisdiction. First, it must be pointed out that the juvenile court is a creature of statute, not of the Constitution. Article IV of the Constitution of Ohio establishes certain courts in this State, and the juvenile court is not among them. In addition, Section 1 of Article IV provides for "such other courts inferior to the court of appeals as may from time to time be established by law." Under this broad grant of authority the General Assembly established the juvenile court.

Secondly, juvenile courts as such were unknown at the common law. Therefore, as to jurisdiction, they have no inherent, historical, or traditional powers upon which to rely. Their authority to adjudicate controversies must rest entirely upon that which has been conferred upon them by the legislature. The power to create a court carries with it the power to define its jurisdiction. *State, ex rel. Ramey, v. Davis*, 119 Ohio St., 596, 165 N. E., 298.

In construing grants of power to inferior courts of limited jurisdiction ("inferior" meaning inferior to the court of appeals, as set forth in Article IV, Section 1 of the Ohio Constitution), or courts not proceeding according to course of common law, nothing is to be held as granted by implication which is not necessary to full exercise of powers expressly granted,

and such courts are confined strictly within limits of powers granted. *State, ex rel. Sparks*, v. *Weber*, 48 Ohio App., 60, 1 Ohio Opinions, 14, 13 Ohio Law Abs., 506, 192 N. E., 386. There is no presumption as to jurisdiction of courts of limited or special jurisdiction. *State, ex rel. Parsons* v. *Bushong*, 92 Ohio App., 101, 49 Ohio Opinions, 245, 109 N. E. (2d), 692; *State, ex rel. Smilack* v. *Bushong*, 93 Ohio App., 201, 50 Ohio Opinions, 499, 112 N. E. (2d), 675 (affirmed in 159 Ohio St., 259, 50 Ohio Opinions, 280, 111 N. E. [2d], 918).

As to subsections (1) and (3) under Section 2151.23(A), Revised Code, other sections of the Revised Code of Ohio clarify the specific juvenile court in which actions couched thereunder may be brought. Section 2151.27, Revised Code, provides with regard to subsection (1) that the complaint or application for care may be filed "in the juvenile court of the county in which such child has a residence or legal settlement, or in which such traffic offense, delinquency, neglect, or dependency occurred, or, in case of a crippled child, where such child is found." Chapter 3111, Revised Code, on Bastardy specifies in detail the procedure to be followed if the jurisdiction conferred on the juvenile court by Section 2151.23(A)(3), Revised Code, is invoked. When, however, the juvenile court is called upon "to determine the custody of any child not a ward of another court," it proceeds upon the grant of power alone without further statutory clarification.

What power, then, did the General Assembly confer upon the juvenile court when it gave it exclusive original jurisdiction "to determine the custody of any child not a ward of another court." The subject matter of this grant of jurisdiction is "any child." Counsel for the movant contends that before the Court may exercise its power the child in question ought to be domiciled in, or at least a resident of the county in which the action is brought. The use of the word "any," however, precludes such limitation. Concededly, such child ought to be physically within the territorial limits of the court, otherwise it could not be brought before the court and any order or decree the court issued might be a practical nullity. Conceivably, the Court might refuse to exercise its jurisdiction if the physical presence of the child within its territorial limits is purely transitory. Since the legislature in its wisdom did not see fit

to impose any express residential or domiciliary limitation on the jurisdiction of the juvenile court in this instance, this Court will not imply one, and holds that the physical presence of the child within the geography of the court empowers the juvenile court to determine its custody—provided it is "not a ward of another court."

The limitation on the grant of power to determine custody, therefore, is not on the residence or domicile of the child, but on whether or not that child is a ward of another court. A summary of applicable statutes and cases indicates that whenever any court makes any authorized order with reference to any person that is continuing in nature, as distinguished from being final when issued, so that the court issuing such order may in its discretion and without the commencement of a new proceedings change it at some unspecified time in the future, that person is a ward of the court. Thus, children under the jurisdiction of the juvenile court are wards of such court. Section 2151.55, Revised Code. Likewise, any person for whom a guardian is acting is a ward of the probate court. Section 2111.01(B), Revised Code. In a divorce action, "when a court upon granting a divorce awards the custody of children to either parent, such children become the wards of the court and the jurisdiction of the court over their custody is continuing." *Arnold* v. *Arnold*, 67 Ohio App., 282, at pg. 285, 21 Ohio Opinions, 258, 34 Ohio Law Abs., 92, 36 N. E. (2d), 430. "Such children are and continue to be virtually wards of the court, at least if the decree of divorce has been rendered." 27B C. J. S., 423, par. 303. See also *Emrich* v. *McNeil*, 126 Fed. (2d), 841, at 844. Specifically, the California Code provides that jurisdiction of the divorce court over children subject to its orders is continuing. See Deering's California Codes, Section 138 (Civil).

Counsel for the applicant, however, contends that the words "ward of another court" in Section 2151.23(A)(2), Revised Code, mean "ward of another court *in this State*." Obviously, the Ohio General Assembly did not so state. To add to the express language of the statute by implication the words "in this state" it would be necessary for this Court to conclude either that in the contemplation of the legislature courts do not exist in any other state except Ohio—specifically as to the

case at bar that the Superior Court of the State of California in and for the County of Alameda is not in actuality a "court"; or that this Court need not recognize a foreign judgment creating a wardship, or that such wardship no longer exists. To conclude as in the first alternative that courts do not exist anywhere else except in Ohio is too absurd to be worthy of comment.

The answer to the question of whether an Ohio Juvenile Court, with its defined jurisdiction, must acknowledge a wardship established by a foreign court requires a more detailed analysis. There is no question, in the instant case, that on December 21, 1960, when the California Superior Court issued an interlocutory decree of divorce to Correll Wolfe and awarded her the custody of the two children here in question, the children at that time being physically within the jurisdiction of the court, they became wards of that court. This status was affirmed on December 22, 1961, when the interlocutory decree became final. It is not within the province of this Court to review the status then created. "An award of custody, like any other judgment or decree of a competent court, is entitled to recognition and enforcement in other states. Such a decree receives the same effect in another state that it receives in the state in which it was rendered. It is, therefore, conclusive of the status of the child at the time the decree was rendered and the merits of such an award cannot be re-examined either in the state where rendered or in another state. . . ." Restatement of the Law, Conflict of Laws, 212, Section 147.

Once a child is properly made a ward of a competent court, this Court holds that such child continues to be a ward of that court until it reaches its majority, or until that court by some authorized act of its own terminates the wardship. To hold that the wardship might terminate without approval of the establishing court would be to deny the concept the continuing jurisdiction. The court itself under appropriate circumstances might terminate its own jurisdiction, as occurs in Ohio when a guardianship is terminated (Section 2111.46, Revised Code), or is transferred (Sections 2111.39, 2111.41, 2111.471, Revised Code); or as occurs when a divorce court, or other court, certified a case concerning a child to the juvenile court (Sections 3109.04, 3109.06, Revised Code); or as occurs when a juvenile court commits a child to the industrial school, etc. (Section

2151.37, Revised Code). No cases have been cited or found which hold that the parties to a proceedings wherein a court has continuing jurisdiction can by their own act, such as leaving the state, irrespective of court orders, deprive that court of its continuing jurisdiction.

A number of cases have been cited on the question of whether a court in one state must give full faith and credit to an award of custody by a court in another state. The fact situations under which these interstate problems arise are numerous, confusing, and troublesome; and courts in different states on almost identical sets of facts have reached diametrically opposite conclusions. None of these cases, however, were concerned with a specific statutory limitation, as in the case at bar, where an Ohio Juvenile Court has no jurisdiction to determine the custody of any child who *is* a ward of another court. The question of wardship was not raised in any of the cases which this Court read.

Among those cases cited was the United States Supreme Court decision in *May* v. *Anderson*, 345 U. S., 528, 73 S. Ct., 840, a case which arose on habeas corpus in the Probate Court of Columbiana County, Ohio, ran the gamut of the Ohio appellate courts, and eventually reached the highest court in the land on certiorari. In that case a Wisconsin divorce court which did not have personal service on the mother, awarded custody of minor children to their father. Later these children visited their mother in Ohio, who refused to release them to their father when he came to take them back to Wisconsin. In reversing the award of the writ of habeas corpus, which was sustained by all participating Ohio courts, the Supreme Court of the United States held that "Court of state where mother was not domiciled, resident or present could not cut off her immediate right to custody of her minor children by awarding custody of such children in ex parte divorce action to the father without having jurisdiction over mother in personam." All that court decided was that children's mother, not being bound by the Wisconsin decree, was not unlawfully depriving their father of their custody, and that therefore, habeas corpus, a special remedy designed to test such unlawful deprivation of custody (see Section 2725.01, Revised Code), would not lie. The question of wardship did not arise there.

Reference has been made to The Restatement of Law, Conflict of Laws, Section 147, a portion of which has been quoted above. That quotation continues: "An award of custody, however, is conclusive only of the status of the child and the parent at the time and such status may be altered by a *competent court* for reasons which arise after the previous award if they are deemed by the court sufficient. Therefore, while courts in other states will enforce the custody decree insofar as it determines the status of the child at the time it was issued, they may, *if they have jurisdiction*, change such award upon facts which have arisen subsequent to the first decree." There is no present quarrel with this statement of law. The question still remains as to what is a competent court, and the Ohio Juvenile Court, regardless of the validity of the general statement of law referred to, is only empowered to determine the custody of a child "not a ward of another court." What other Ohio courts might be authorized to proceed in a case involving these principles of law need not here be determined. For example, see *In re Wyant*, 72 Ohio App., 249, 27 Ohio Opinions, 105, 51 N. E. (2d), 221, a probate court case dealing with adoption jurisdiction.

Applying the facts to the law, the court finds that Rhonda Rae and Jeffrey Lee Wolfe are wards of the Superior Court of California in and for the County of Alameda, and that therefore the Ohio Juvenile Court is without jurisdiction to determine their custody. The motion to dismiss the application to determine custody will be sustained and the injunction restraining the mother of these children from removing them from Preble County will be dissolved.

The conclusions here announced bring this Court into direct conflict with the case of *Bain* v. *Rose*, 103 Ohio App., 297, 3 Ohio Opinions (2d), 326, 145 N. E. (2d), 319, an original action in Prohibition in the Franklin County Court of Appeals brought for the purpose of prohibiting the Judge of the Franklin County Juvenile Court from determining the custody of a child whose parents were divorced in the State of Illinois, with the child's custody being awarded to the mother by that court. Applying the principles announced in the Restatement of Law, Conflicts of Law, as quoted supra, this Court of Appeals refused to grant the writ and held that "the right to custody of a minor child,

the duty to support and the right of a parent to reasonable visitation may, where the interest of the child requires it, be determined or altered by a court of this state in whose jurisdiction the child may be, even though a court of another state has determined the right to custody.'' Admitting as we may that the foregoing ought to be the law, unfortunately that Court in its opinion neither referred to nor in any way considered that the Juvenile Court is empowered only to determine the custody of any child *not a ward of another court*. It is impossible to determine a court's jurisdiction without contemplating the statutes which create that court and give it jurisdiction. The question is not what did the General Assembly intend to enact, but what is the meaning of that which it did enact. A court is not permitted to read words into or out of the statute but must accept the enactment of the General Assembly as it stands. *State* v. *Stevens*, 161 Ohio St., 432, 53 Ohio Opinions, 343, 119 N. E. (2d), 616; *Slingluff* v. *Weaver*, 66 Ohio St., 621, 64 N. E., 574. Being in a different appellate district, the Preble County Juvenile Court is not controlled by the pronouncements of the Franklin County Court of Appeals. For reasons given, neither is it persuaded by their logic.

The salutary purpose of the Juvenile Court Code as announced in Section 2151.55, Revised Code, is not disturbed by the decision rendered here. Ample authority exists in both the statutes and the case law for the court to take immediate action in the interests of children within its jurisdiction who are deliquent, neglected, dependent, or crippled, or otherwise physically handicapped—children who require immediate care, guidance, or control. No such dire need is alleged in the case at bar.

This Court is, nevertheless, somewhat disturbed by the fact that an application of *May* v. *Anderson, supra,* to the situation in the case at bar conceivably might leave the movant without any remedy. The absence of a remedy, however, does not authorize a court to create one. That is a project for the legislature.

Counsel for movant may prepare an entry in accordance with this opinion, with costs to the applicant.