SHIRLEY STADLER, ADMINISTRATRIX OF THE ESTATE OF ROY STADLER, DECEASED, APPELLANT, V. CURTIS GAS, INC., A CORPORATION, ET AL., APPELLEES.

151 N. W. 2d 915

Filed June 30, 1967. No. 36483.

Smith Brothers and John Wightman, for appellant.

Cline, Williams, Wright, Johnson, Oldfather & Thompson, for appellee Board of Regents.

Maupin, Dent, Kay & Satterfield, Clinton J. Gatz, and Donald E. Girard, for appellee Curtis Gas, Inc.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

BOSLAUGH, J.

This is an action by the administratrix of the estate of Roy Stadler, deceased, to recover damages for his injury and death. The deceased was injured on May 20,

1965, in a gas explosion caused by a defective valve on a water heater in a residence leased by the deceased from the defendant, Board of Regents of the University of Nebraska. The deceased died on June 7, 1965, as a result of the injuries sustained in the explosion on May 20, 1965.

The second amended petition alleged that employees of the defendant, Curtis Gas, Inc., had serviced the water heater in March at the request and authorization of the Board of Regents; that Curtis Gas, Inc., had notified the Board of Regents that the valve was defective but that each defendant had failed to repair the heater or notify the deceased of its defective condition; and that the Board of Regents was negligent in failing to keep the premises in a safe condition and in failing to warn the deceased of the defective valve.

The second amended petition further alleged that the Board of Regents had acquired the property in August 1947; that it had been leased to others since May 1964; that it was leased to the deceased on or about February 27, 1965; that there was no relationship between the Board of Regents and the deceased other than that of landlord and tenant; that the leasing of the property by the Board of Regents "was in the same nature and capacity as that of private parties leasing dwelling houses for rent"; and that the Board of Regents "was acting beyond the scope of any governmental capacity for which it was created" in leasing the property to the deceased.

A general demurrer filed by the Board of Regents was sustained and the action dismissed as to that defendant. The administratrix has appealed.

The question presented is whether the Board of Regents of the University of Nebraska may be liable for the negligence of its agents and employees. The Board of Regents contends that it is an agency of the state and as such is immune from liability.

By statute, the Board of Regents of the University of

Nebraska in constituted "a body corporate" that "may sue and be sued." § 85-105, R. R. S. 1943. This statute permits the maintenance of an action against the Board of Regents but it is not a waiver of any immunity from liability. A consent to suit is a waiver of immunity from suit which permits the enforcement of a preexist-, ing liability. It is not a waiver of immunity from liability and does not create a cause of action not previously existing. Shear v. State, 117 Neb. 865, 223 N. W. 130; Kent v. State, 118 Neb. 501, 225 N. W. 672.

The plaintiff contends that the renting of the residence property to the deceased in this case was a nongovernmental or proprietary activity of the Board of Regents to which the immunity from liability does not extend. The Board of Regents argues that all of its activities are governmental in nature and the state engages in no activity of a nongovernmental or proprietary nature.

Although there is some conflict in the authorities, this court has recognized the doctrine that the state and its agencies may engage in proprietary activities and thereby incur liabilities from which they would otherwise be immune. In Sorensen v. Chimney Rock Public Power Dist., 138 Neb. 350, 293 N. W. 121, this court said: "* * * when a state, by itself or through its corporate creations, embarks in an enterprise, especially when commercial in character or which is usually carried on by individuals or private companies, its sovereign character is ordinarily waived, and it is subject to like regulations with persons engaged in the same calling." See, also, Platte Valley Public Power & Irr. Dist. v. County of Lincoln, 144 Neb. 584, 14 N. W. 2d 202, 155 A. L. R. 412; People v. Superior Court, 29 Cal. 2d 754, 178 P. 2d 1, 40 A. L. R. 2d 919.

In this case the plaintiff has alleged that there was no relationship between the Board of Regents and the deceased other than that of landlord and tenant, and that the leasing of the property by the Board of Regents was in the same nature and capacity as that of private

parties leasing dwelling houses for rent. In Pintek v. County of Allegheny, 186 Pa. Super. 366, 142 A. 2d 296 (Allocatur refused), the Superior Court of Pennsylvania held that a school district, a county, and a borough, which were operating an apartment building that they had bid in at a tax sale, were engaged in a proprietary activity and liable for injuries to a child who was injured on a defective fire escape. In the language of the court, they were "conducting a business operation on the premises as distinguished from a governmental operation." See, also, Morris v. School Dist. of Mount Lebanon, 393 Pa. 633, 144 A. 2d 737.

The ultimate determination in this case, as to whether there is any basis for liability on the part of the Board of Regents to the plaintiff, will necessarily depend upon the facts. Upon the present state of the record, the demurrer of the Board of Regents should have been overruled.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

NEWTON, J., dissenting.

I find it necessary to respectfully dissent from the majority opinion. I fully agree that the rule of governmental immunity should be relaxed as it relates to the State of Nebraska. The obsoleteness of the rule was well pointed out by Justice Edwards in the case of Williams v. City of Detroit, 364 Mich. 231, 111 N. W. 2d 1, when he said, it is: "* * * an ancient rule inherited from the days of absolute monarchy which has been productive of great injustice in our courts. By so doing (eliminating the rule), we join a major trend in this country toward the righting of an age-old wrong." Indeed, logic dictates that a person run over by a state-owned truck should have the same right to recover as one run over by a privately owned truck.

I disagree that the power to abolish the immunity doctrine in Nebraska should be exercised by the judicial

branch of state government. It has been said that the doctrine having been originally of judicial conception should be abolished by the judiciary. Such a conclusion does not necessarily follow. It must be borne in mind that this doctrine antedates our state constitutions and that many of our state constitutions were adopted with this rule in mind. Such is the case in Nebraska.

In this state we have a constitutional provision as follows: "The state may sue and be sued, and the legislature shall provide by law in what manner and in what courts suits shall be brought." Art. V, § 22, Constitution of Nebraska.

A majority of the states still adhere to the immunity doctrine and many of those which have abrogated it as to charitable and municipal corporations have refused to abrogate it insofar as the state is concerned. Wisconsin announced complete abrogation of the doctrine in Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N. W. 2d 618, but I am unable to find any case in which the Wisconsin court has actually held that it was abrogated in a tort action against the state itself. In this Wisconsin case, the court, in effect, destroyed the applicability of its rule abrogating governmental immunity for tort liability by referring to the Wisconsin Constitution which provides: "The legislature shall direct by law in what manner and in what courts suit may be brought against the state." It then went on to say: "The decision in the case at bar removes the state's defense of nonliability for torts, but it has no effect upon the state's sovereign right under the constitution to be sued only upon its consent." Minnesota announced abrogation of the doctrine prospectively in S'panel v. Mounds View S'chool Dist. No. 621, 264 Minn. 279, 118 N. W. 2d 795, but in that case specifically stated: "Nor is it our purpose to abolish sovereign immunity as to the state itself."

A number of other states having similar constitutional provisions have likewise refused judicial abolition of the doctrine on the ground that the constitution vested

such authority in the legislative and not the judicial branch of government. See, Wilson v. City of Cincinnati, 172 Ohio St. 303, 175 N. E. 2d 725; Bach v. Bach (Ky. App.), 288 S. W. 2d 52; Hill v. Beeler, 199 Tenn. 325, 286 S. W. 2d 868; Chumbley v. State, 183 Tenn. 467, 192 S. W. 2d 1007; United Contracting Co. v. Duby, 134 Or. 1, 292 P. 309; Schippa v. West Virginia Liquor Control Commission, 132 W. Va. 51, 53 S. E. 2d 609, 9 A. L. R. 2d 1284; Turner v. State, 27 Ark. 337.

The import of such constitutional provisions is well summarized in 81 C. J. S., States, § 215 a, p. 1304, wherein it is said: "Although a state's consent to be sued in its own courts may be expressed in the state constitution, constitutional provisions authorizing or requiring the legislature to direct by law the manner and courts in which the state shall be sued are generally regarded as not being self-executing, and no suit may be maintained against the state until the legislature has properly provided therefor." This rule has been recognized in Nebraska for many years. See, Gentry v. State, 174 Neb. 515, 118 N. W. 2d 643; McShane v. Murray, 106 Neb. 512, 184 N. W. 147; Cox v. State, 134 Neb. 751, 279 N. W. 482; Offutt Housing Co. v. County of Sarpy, 160 Neb. 320, 70 N. W. 2d 382; State ex rel. Davis v. Mortensen, 69 Neb. 376, 95 N. W. 831. It will be noted that the requirement is for the "legislature," not the courts, to authorize suit under such constitutional provisions.

Even in many of the states which apparently do not have such constitutional provisions, the courts have held that the matter is one for legislative and not judicial action. In Simpson v. Truesdale Hospital, 338 Mass. 787, 154 N. E. 2d 357, it was said: "While as an original proposition the doctrine might not commend itself to us today, it has been firmly imbedded in our law for over three quarters of a century and we think that its 'termination should be at legislative, rather than at judicial, hands.'" In In re Wolfe, 26 Ohio O. 2d 274, 187 N. E. 2d 658, it was said: "The absence of a remedy,

however, does not authorize a court to create one. That is a project for the legislature." In Thompson v. Druid City Hospital Board, 279 Ala. 314, 184 So. 2d 825, it was said: "Regardless of what our personal or private views might be on a matter of this kind, this court still prefers to be labeled 'unprogressive and unenlightened' * * * than to usurp the traditional powers and duties of the legislature. To adopt the position urged by appellant would be not only to go against the weight of authority but to do so without legislative sanction. If and when the legislature sees fit to change the existing law in Alabama, this court will perform its function in conformity thereto. Until then, we shall content ourselves with the performance of our judicial function as best we can and leave the law making function to the legislative branch." In McNayr v. Kelly (Fla.), 184 So. 2d 428, it was said: "Extension, qualification or abolition of immunity of government executive officers from liability for libel or slander is a matter for legislative branch of government, * * * and not for courts, which, in exercise of judicial power, merely decide, in accordance with such legislative guidelines, cases which have arisen." In Boyer v. Iowa High School Athletic Assn., 256 Iowa 337, 127 N. W. 2d 606, it was said: "* * * whether or not the state or any of its political subdivisions or governmental agencies are to be immune from liability for torts is largely a matter of public policy. The legislature, not the courts, ordinarily determines the public policy of the state. * * * Although the doctrine of governmental immunity may have been of ancient judicial origin, it has been recognized as the policy of the state by the limited action of the legislature toward relaxation. The purposes for which public funds may be expended are limited by statute. The legislature recognized and relaxed the limitation by passage of laws authorizing purchase of liability insurance covering proprietary functions and officers and employees of certain public bodies. Had the legislature favored complete

abrogation of the immunity rule, as plaintiff contends for, it could have said so * * *. In the particulars wherein the legislature has acted we have a clear recognition of legislative responsibility for action in the field of public policy. The limited action taken shows more than mere tacit approval of the long-standing doctrine left unchanged." To the same effect are McCoy v. Board of Regents, 196 Kan. 506, 413 P. 2d 73; and Elizabeth River Tunnel Dist. v. Beecher, 202 Va. 452, 117 S. E. 2d 685, 85 A. L. R. 2d 469.

There is one factor regarding the doctrine of governmental immunity which sometimes leads to confusion. The doctrine consists of two different and readily distinguishable principles. See 81 C. J. S., States, § 130, p. 1137, § 214, p. 1300. The first is immunity from *suit*, and the second, immunity from *liability*. The Nebraska constitutional provision, adopted when the immunity rule was universally recognized, incorporated the first principle, but not the second, in our Constitution. This left governmental agencies in the position best demonstrated by our law pertaining to counties. Section 23-101, R. R. S. 1943, authorizes counties to "sue and be sued." Yet Nebraska courts have always held that a county is purely a creation of the Legislature and has no powers and is charged with no duties or liabilities except such as are conferred or laid upon it by the Legislature. "Counties are not liable in damages resulting from the negligent or tortious acts of their officers in the discharge of their official duties, in the absence of a statute creating such liability." Dawson County Irr. Co. v. Dawson County, 106 Neb. 367, 183 N. W. 655. See, also, Frickel v. Lancaster County, 115 Neb. 506, 213 N. W. 826; Stitzel v. Hitchcock County, 139 Neb. 700, 298 N. W. 555. Here we have a situation where the Legislature has waived the constitutional provision by authorizing *suit* against a county, but the common law doctrine of immunity from *liability* persists and prevents recovery.

Regarding the present case, the Legislature by passage

of section 85-105, R. R. S. 1943, has apparently waived the constitutional provision, and the immunity of Board of Regents from suit. It did not waive this agency's common law immunity from liability. This has now been done by the decision adhered to by a majority of the members of this court. The decision is clearly against the weight of authority and in my judgment is one best left to legislative discretion. Its effects will be widespread in that it subjects some state agencies, and all counties and municipalities, to suits of all types. A few state agencies which have not been authorized to "sue and be sued" will still be protected by the constitutional provision above mentioned; otherwise there are no restraints. If history repeats, the Nebraska Legislature will react, as have legislatures in other states where the immunity rule has been abolished by judicial rather than legislative action, with a hodgepodge of legislative acts aimed at restricting the effect of such judicial abolition. It would appear that a much more orderly approach could be obtained by permitting the Legislature to relax the immunity rule in such manner as may be deemed best in the light of wisdom, experience, public policy, and modern conditions.

In the present case, the majority opinion is based on the assumption that the Board of Regents was engaged in a "proprietary" function. Such assumption is unwarranted. How the house was acquired does not appear, but since the law of Nebraska does not authorize the Board of Regents to engage in the real estate business, it must be presumed that it was acquired in its governmental capacity. There is certainly a distinction between the renting of an isolated or single property so acquired in pursuit of its governmental functions and the engaging in a business or industrial activity of the nature generally denominated as "proprietary." This is not a case of operation of a utility or similar enterprise by a municipal corporation.

I conclude that the judgment of the district court should be affirmed.

WHITE, C. J., and CARTER, J., concur in dissent.

WHITE, C. J., dissenting.

In my opinion, the court itself is embarking on a "private enterprise" in abrogating the Legislature's power to control and limit the state's basic immunity to liability for tort. The majority opinion cites Shear v. State (1929), 117 Neb. 865, 223 N. W. 130, but fails to note its basic holding as follows: "The legislature has not by law granted to any one the right to recover against the state damages for negligence of any of its officers, agents, or employees, *and until such legislation is enacted*, no recovery against the state can be had for such negligence." (Emphasis supplied.) This precise holding was reaffirmed in 1946. Schmutte v. State, 147 Neb. 193, 22 N. W. 2d 691. This rule follows the overwhelming weight of authority. See 81 C. J. S., States, §§ 130, 131, pp. 1137, 1143. It cannot be questioned that the Board of Regents is a direct agency of the state and is cloaked with the same immunity.

Beyond the other considerations of public policy inherent in the sovereign immunity doctrine, the reason for the special rule as to nonliability for tort is tersely expressed in Robertson v. Sichel, 127 U. S. 507, 8 S. Ct. 1286, 32 L. Ed. 203, as follows: "The government itself is not responsible for the misfeasances, or wrongs, or negligences, or omissions of duty, of the subordinate officers or agents employed in the public service; for it does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs; since that would involve it, in all its operations, in endless embarrassments, and difficulties, and losses, which would be subversive of the public interests."

There is no statute whereby this state has assumed' a liability for the negligence of its officers or agents; and I can find no established principle of law sustaining such liability in the absence of such statutory assumption.

To change substantive law is the province of the Legislature, and not of this court.

While I agree with the other dissents filed herein that the renting of this house was in no sense a business enterprise or a "proprietary" function, I point out that the Legislature has not authorized the Board of Regents, as a state agency, to embark on a private or commercial enterprise or engage in a "proprietary" capacity. Its control and management of property is incidental to and a part of its performance of its governmental function of operation and management of the University of Nebraska. As Judge Newton's dissent points out, the analogy to our cases holding counties free from liability unless provided by statute would seem to be controlling.

The majority opinion cites Sorensen v. Chimney Rock Public Power Dist., 138 Neb. 350, 293 N. W. 121. This case does not deal with tort liability of the state or its direct agencies. It establishes the liability of a public power district for the purchase of supplies used in connection with the business of supplying and selling electric power, the court finding that the statute authorized contracting for the purchase of supplies and therefore the Legislature had provided for liability for the same. We have no doubt that in such a case the Legislature has waived immunity and that a power district, engaged in a commercial enterprise, is liable for a purchase of supplies within the scope of legislatively authorized power to contract. But this is far different from a legislative waiver of immunity for unauthorized negligent tortious acts of misfeasance or nonfeasance.

By judicial fiat today we sever from the Legislature the power to determine the state's liability for tort. But we cannot sever its power to determine whether such a judgment can be enforced. The Legislature can still pay all or any part of such a judgment and formulate any criteria for payment as it sees fit, which power it has now. Would anyone suggest that the Legislature could be mandamused to appropriate the necessary

funds? This situation graphically illustrates that what we are doing today usurps our proper authority contrary to the constitutional command as to the division of powers of our state government. The legislative body of this state has plenary and absolute control over the state's finances. Even the majority would not suggest otherwise. Any power to create a liability on the state treasury must be derived from statute, and state courts have no inherent power to create such liability. 81 C. J. S., States, § 128, p. 1134; Advisory Opinion to the Governor, 156 Fla. 45, 22 So. 2d 397; Armory Commission v. Palmer, 253 Ky. 425, 69 S. W. 2d 681; State ex rel. Plant v. Board of Commissioners, 80 W. Va. 506, 92 S. E. 747; Estate of Buxton, 246 Wis. 97, 16 N. W. 2d 399. The inseparability of the two functions is recognized in the rule that even where specific legislative authority for suit exists, an agency of the state may not be sued in tort if there are no funds available for satisfaction of a judgment, or no power reposed in the agency for the raising of funds necessary to satisfy a recovery against it. 81 C. J. S., States, § 131, p. 1144. In University of Maryland v. Maas (1938), 173 Md. 554, 197 A. 123, the court said: "The decided cases here and elsewhere recognize and affirm the principle that purely governmental agencies, because of their relation to the state, are entitled to immunity from suits as is the state itself, unless the legislature has expressly authorized suits to be brought against it, but this authority to sue is not free from restrictions, even though they are not expressly made by the legislature, for this court has held that suits may not be maintained unless money has been appropriated for the payment of such damages as may be awarded, or the agency itself is authorized to raise money for that purpose."

The University has no profits or funds from a business or industrial activity to pay such a judgment and the Legislature might or might not appropriate funds for such payment. The conclusion from all of this is

inevitable—this is exclusively a legislative power and prerogative and should remain so.

Now that this uncertain course is created, does the Legislature's power under the constitutional provision still prevail? Is a legislative act limiting the rule adopted today merely advisory in nature? Is the Legislature's power to create political subdivisions and state agencies and define their power and liabilities limited? In the wilderness of the nebulous doctrine of "proprietary" functions, can this court and the Legislature avoid conflict and confusion?

The power of restraint imposed on the judiciary is the power of self-restraint. The tendency to usurp power to achieve a laudable policy objective is all too prevalent. The principle of division of power should not be crucified lightly. It is our solemn and perhaps paramount duty to preserve it. How can we preserve it by honoring it in the breach? And if there is doubt, judicial self-restraint requires resolution against the exercise of that very power. What we are doing today is responding to the "felt necessities of the time," under the guise of judicial power. The end does not justify the means and an objective born of judicial impatience should not be accomplished by judicial usurpation.

CARTER and NEWTON, JJ., join in this dissent.

CARTER, J., dissenting.

I concur fully with the dissent filed by Newton, J. The concurring opinion filed by McCown, J., fails to distinguish between a business enterprise in competition with private business and transactions that are incidental only to the administration of governmental power. Many incidental acts of government are also done by private persons. It is completely illogical to say that general governmental powers shall be separated into distinct acts necessary to this accomplishment of the purpose of the grant of governmental authority and hold that those which may be performed by private persons are beyond the reach of the sovereign immunity doctrine. It is

fundamental that the state or its subdivisions may not engage in a proprietary business without legislative authority.

The immunity of the state for the torts of its agents and employees rests on a much broader doctrine. It involves the right of the sovereign authority to be free of such liability except to the extent that it is waived or abrogated by the Legislature, the branch of government which determines matters of public policy. The Legislature has not waived or abrogated its immunity for tort, nor has it said in what manner and in what courts actions for tort may be brought against the state as required by Article V, section 22, Constitution of Nebraska.

The doctrine of sovereign immunity has been the law of the land in state and federal governments since our constitutional system of government has been established. It is true that many text and review writers have complained of the inequities of the doctrine and have advocated its abandonment or limitation, but in almost every instance they have conceded that such action is legislative and not judicial. I am firmly convinced that the majority opinion exercises a legislative function by judicial fiat.

The courts of this country have had the application of the doctrine before them on numerous occasions. In all the reported decisions no court has ever said, so far as I have been able to find, that a factual situation such as we have here, comes within the proprietary rule. The majority opinion relies upon Pintek v. County of Allegheny, 186 Pa. Super. 366, 142 A. 2d 296, an inferior court decision, to sustain its holding. But the holding of that court is based on a Pennsylvania statute authorizing the operation and a factual situation bearing no resemblance to the present case. The concurring opinion does not cite a single case to support it, because there are none to support it. It hardly seems possible that all of the learned judges that have served over the

years on the appellate courts of this country could have overlooked so simple an expedient as the proprietary principle to escape the reach of the sovereign immunity doctrine. The long establishment of the principle and the dearth of authority to support its judicial abrogation, whether on the theory of its being a proprietary function as herein defined or otherwise, adds force to the view that the majority opinion is an encroachment on the powers of the Legislature. It is the function of courts to declare the law as it is and not as they would like to have it. Judicial restraint should be meticulously exercised in guarding against violation of the division of powers provision of the Constitution. This court ought, at least, to impose upon itself the same restraints that it imposes upon the other divisions of government by seeing to it that no claimed equity, however appealing it may be, infringes upon this fundamental principle of the Constitution.

Here the Legislature has not authorized the Board of Regents to enter into a proprietary business, nor has the Legislature abrogated or limited the immunity of the Board of Regents from tort, or provided in what manner and in what courts such suits shall be brought. These failures alone defeat the plaintiff's claim.

WHITE, C. J., and NEWTON, J., join in this dissent.

McCOWN, J., concurring.

The doctrine of governmental immunity from tort liability in the United States has been considered and challenged for decades. As foundation articles in the 1920 era, see Borchard, Government Liability in Tort, 34 Yale L. J. 1, 6, and Harno, Tort Immunity of Municipal Corporations, 4 Ill. L. Q. 28, 42.

The governmental-proprietary distinction initially developed in connection with municipal corporations or quasi corporations of the state, as a means of constricting the area of immunity or broadening the area of liability, was extended to the state itself. See Annotation, State's immunity from tort liability as dependent on gov-

ernmental or proprietary nature of function, 40 A. L. R. 2d 927.

The rationale behind the "governmental-proprietary" dichotomy is that when a public entity is involved in a governmental function, it is immune from tort liability, but when involved in a proprietary function, it loses the cloak of immunity. The terms "public, sovereign, political, state, mandatory, essential, discretionary, legislative" have been used interchangeably with "governmental." The terms "private, corporate, quasi-private, nongovernmental, nonessential, ministerial, commercial, permissive" have been used interchangeably with "proprietary." See, Rebko, American Legal Commentary on the Doctrines of Municipal Tort Liability, 9 Law and Contemporary Problems, 214, 218; 2 Harper & James, Torts, § 29.5, p. 1620. These terms might be called liability or nonliability labels.

During the past 10 years judicial opinions in increasing volume have shifted from a process of whittling away to a much sharper attack, including complete abrogation of the doctrine in several states, which, in most instances, has been followed by legislative reaction. See, Some Thoughts on the American Law of Governmental Tort Liability, 20 Rutgers L. Rev. 710 (1966); The Role of the Courts in Abolishing Governmental Immunity, Duke L. J. (1964), 888.

The governmental-proprietary distinction is unsatisfactory. The consequences of immediate and complete abrogation of the doctrine, with all of its ramifications, is likewise unsatisfactory. The former, however, does provide a case-by-case modification of the doctrine of governmental immunity in the traditional pattern of solution.

The dissents here indicate the basic judicial conflict is no longer in the area of whether the old doctrine of governmental immunity from tort liability is obsolete, but only with the question of the responsibility and power of the courts to reform it. For a thorough dis-

cussion of the relative responsibilities of courts and legislatures in this area, see Peck, The Role of the Courts and Legislatures in the Reform of Tort Law, 48 Minn. L. Rev. 265.

Justice Schaefer of the Supreme Court of Illinois has expressed the problem of precedent and policy most effectively. "Precedent speaks for the past; policy for the present and the future. The goal which we seek is a blend which takes into account in due proportion the wisdom of the past and the needs of the present. Two agencies of government are responsible for the proper blend, but each has other responsibilities as well. The legislature must deal with the ever increasing details of governmental operations. It has little time and little taste for the job of keeping the common law current. The courts are busy with the adjudication of individual controversies. Inertia and the innate conservatism of lawyers and the law work against judicial change." 34 U. Chicago L. Rev. 3, 24.

While the majority opinion here does not constitute an immediate and complete abrogation of the entire doctrine of governmental immunity in Nebraska, its implications suggest the desirability of legislative action.

SPENCER, J., joins in this concurrence.